# Exhibit No. 1

Lykes Lines LYKES LINES, A DIVISION OF CP SHIPS USA, LLC
www.lykeslines.com

# EXPRESS BILL

| SHIPPER/EXPORTER (complete name and address) | BOOKING NO | BILL OF LADING NO |
|---|---|---|
| OCEANE MARINE SHIPPING, INC<br>1770 RISING MIST LANE<br>CUMMING, GA 30041 | ATLRL01663 | ATLRL016630 |
| | EXPORT REFERENCES<br>OUR REFERENCE#: 251094 | CUSTOMER REFERENCE |

| CONSIGNEE (not negotiable unless consigned to order) | FORWARDING AGENT | FMC NO | CHB NO |
|---|---|---|---|
| UCHE NWOKOCHA<br>42 FAGBENRO SQ<br>OFF RANDALL AVENUE<br>SURE-LERE LAGOS NIGERIA | OCEANE MARINE SHIPPING, INC<br>1770 RISING MIST LANE<br>CUMMING, GA 30041 | | |

| NOTIFY (complete name and address) | ALSO NOTIFY - ROUTING & INSTRUCTIONS |
|---|---|
| SAME AS CONSIGNEE | |

| *PRE-CARRIAGE BY | *PLACE OF RECEIPT BY PRE-CARRIER | POINT (STATE) OF ORIGIN OR FTZ NUMBER | |
|---|---|---|---|
| VESSEL/VOYAGE<br>ATLANTIC PROJECT 006S | PORT OF LOADING<br>NEW YORK | LOADING PIER/TERMINAL<br>NEW YORK | |
| PORT OF DISCHARGE<br>TEMA | *PLACE OF DELIVERY BY ONCARRIER<br>CINCAN ISLAND-LAGOS | TRANSPORT MODE<br>CY -CY | TARIFF NO / SERVICE CONTRACT NO<br>019627-367 5877 |

*Applicable only when used in multimodal service.

PARTICULARS FURNISHED BY SHIPPER

| SHIPMENT CODE -MARKS & NUMBERS CONTAINER & SEAL NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | 1 | X 40'HC CONTAINER<br>SHIPPERS WEIGHT LOAD AND COUNT<br><br>2000 MITSUBISHI TRUCK<br>VIN JA4MT31H3YP035806<br><br>2000 TOYOTA 4 RUNNER<br>VIN JT3HN86R6Y0300893<br><br>2000 TOYOTA 4S<br>VIN 4T1BG22K8YU741320<br><br>180 PIECES<br>HOUSEHOLD GOODS/PERSONAL EFFECTS<br><br>NO SED REQUIRED-AESXTN:<br>582286382-251094 | | |
| CN: CMUU4614892<br>SN1: 6622370 | | 183 PIECE(S) | 4535.970KG<br>10000.000LB | |

EXPRESS B/L:AT REQUEST OF SHIPPER NO ORIGINAL BILL OF LADING ISSUED. THIS COPY TO SERVE AS CARRIER'S RECEIPT FOR GOODS AND CONTRACT OF CARRIAGE.

CONTINUED ON PAGE: 2

Received in apparent good order and condition (unless otherwise stated herein) the total number of containers or other packages or units indicated above. In accepting this document, albeit without signing it himself, the merchant expressly agrees and accepts that carriage is subject to all the terms and conditions, including the terms and conditions, on the reverse hereof, whether written, printed, stamped or otherwise incorporated and the terms and conditions of the carriers applicable tariff particularly as regards CONTAINER AND VEHICLE DEMURRAGE. Carriage to be from the Place of Receipt or the Port of Loading, to the Port of Discharge or Place of Delivery, whichever is applicable. The carrier has the right to ship Goods on deck as per clause 11. FOR BILLS OF LADING. If the carrier so requires, before he arranges delivery of the Goods, one original bill of lading, duly endorsed, must be surrendered by the merchant to the carrier. In witness whereof, the number of originals stated below have been issued, one of which being accomplished, the other(s) to be void. FOR SEA WAYBILLS/EXPRESS BILLS. The Goods shipped under this Sea Waybill will be delivered to the party named above as consignee or it's authorized agents, on production of proof of identity without any documents formalities. Delivery otherwise than to the party and at the place set out above, at the request of the consignee, may be agreed by the carrier but subject always to the shippers agreement. The carrier to exercise due care, ensuring that delivery is made to the proper party, however, in case of incorrect delivery, no responsibility will be accepted unless due to fault or neglect on the part of the carrier. All references to "Bill of Lading" in this document should be taken to read "Sea Waybill" / "Express Bill" when printing Sea Waybills / Express Bills.

| FREIGHT CHARGES | PAY AT | RATE BASIS | PREPAID | COLLECT |
|---|---|---|---|---|
| FREIGHT CHARGES | TAMPA | 2740.00 CTR | 2740.00USD | |
| BUNKER ADJUSTMENT | TAMPA | 850.00 CTR | 850.00USD | |
| TOTAL CHARGES | | | 3590.00USD | |

Declared Cargo Value $ ____________. If Merchant enters a value carrier's limitation of liability shall not apply and the ad valorem rate will be charged. See clause 18 and carrier's tariff

NO. OF ORIGINAL B(s)/L NONE

BILL OF LADING NO ATLRL016630

***********************

*** NON-NEGOTIABLE ***

***********************

PLACE OF ISSUE TAMPA, FL — DATE 21 NOV 05

By: CP SHIPS

As Agents for the Carrier

LYKES LINES A DIVISION OF CP SHIPS USA, LLC
401 E. Jackson Street
Tampa, FL, 33602 USA SCAC: LYKL

PAGE: 2

Lykes Lines LYKES LINES, A DIVISION OF CP SHIPS USA, LLC
www.lykeslines.com

# EXPRESS BILL

SHIPPER/EXPORTER (complete name and address)
OCEANE MARINE SHIPPING, INC
1770 RISING MIST LANE
CUMMING, GA 30041

BOOKING NO: ATLRL01663

BILL OF LADING NO: ATLRL016630

EXPORT REFERENCES
OUR REFERENCE#: 251094

CUSTOMER REFERENCE

CONSIGNEE (not negotiable unless consigned to order)
UCHE NWOKOCHA
42 FAGBENRO SQ
OFF RANDALL AVENUE
SURE-LERE LAGOS NIGERIA

FORWARDING AGENT
OCEANE MARINE SHIPPING, INC.
1770 RISING MIST LANE
CUMMING, GA 30041

FMC NO

CHB NO

NOTIFY (complete name and address)
SAME AS CONSIGNEE

ALSO NOTIFY - ROUTING & INSTRUCTIONS

| *PRE-CARRIAGE BY | *PLACE OF RECEIPT BY PRE-CARRIER | POINT (STATE) OF ORIGIN OR FTZ NUMBER | |
|---|---|---|---|
| | | | |
| VESSEL/VOYAGE | PORT OF LOADING | LOADING PIER/TERMINAL | |
| ATLANTIC PROJECT 006S | NEW YORK | NEW YORK | |
| PORT OF DISCHARGE | *PLACE OF DELIVERY BY ONCARRIER | TRANSPORT MODE | TARIFF NO / SERVICE CONTRACT NO |
| TEMA | CINCAN ISLAND-LAGOS | CY -CY | 019627-367 5877 |

*Applicable only when used in multimodal service.

PARTICULARS FURNISHED BY SHIPPER

| SHIPMENT CODE-MARKS & NUMBERS CONTAINER & SEAL NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | | "FREIGHT PREPAID"<br>ON BOARD 11/21/05<br>THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED. ULTIMATE DESTINATIONLAGOS, | | |

Received in apparent good order and condition (unless otherwise stated herein) the total number of containers or other packages or units indicated above. In accepting this document, albeit without signing it himself, the merchant expressly agrees and accepts that carriage is subject to all the terms and conditions, including the terms and conditions, on the reverse hereof, whether written, printed, stamped or otherwise incorporated and the terms and conditions of the carriers applicable tariff particularly as regards CONTAINER AND VEHICLE DEMURRAGE. Carriage to be from the Place of Receipt or the Port of Loading, to the Port of Discharge or Place of Delivery, whichever is applicable. The carrier has the right to ship Goods on deck as per clause 11. FOR BILLS OF LADING, if the carrier so requires, before he arranges delivery of the Goods, one original bill of lading, duly endorsed, must be surrendered by the merchant to the carrier. In witness whereof, the number of originals stated below have been issued, one of which being accomplished, the other(s) to be void. FOR SEA WAYBILLS/EXPRESS BILLS, The Goods shipped under this Sea Waybill will be delivered to the party named above as consignee or it's authorized agents, on production of proof of identity without any documentary formalities. Delivery otherwise than to the party and at the place set out above, at the request of the consignee, may be agreed by the carrier but subject always to the shippers agreement. The carrier to exercise due care, ensuring that delivery is made to the proper party, however, in case of incorrect delivery, no responsibility will be accepted unless due to fault or neglect on the part of the carrier. All references to "Bill of Lading" in this document should be taken to read "Sea Waybill" / "Express Bill" when printing Sea Waybills / Express Bills.

| FREIGHT CHARGES | PAY AT | RATE BASIS | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |
| TOTAL CHARGES | | | | |

Declared Cargo Value $ ________. If Merchant enters a value carrier's limitation of liability shall not apply and the ad valorem rate will be charged. See clause 15 and carrier's tariff

NO. OF ORIGINAL B(s)/L NONE

BILL OF LADING NO ATLRL016630

**********************
*** NON-NEGOTIABLE ***
**********************

PLACE OF ISSUE: TAMPA, FL

DATE: 21 NOV 05

By: CP SHIPS

As Agents for the Carrier

LYKES LINES, A DIVISION OF CP SHIPS USA LLC
401 E Jackson Street
Tampa, FL, 33602 USA SCAC: LYKL

Note: Where this document is issued as a Non Negotiable Sea Waybill, all references herein to "Bill of Lading", except those in Clauses 1 (f) and 16 (g) below, shall be read to mean "Sea Waybill"

**1. DEFINITIONS.** As used in this Document :

a) Carriage: means the undertaking by the Carrier in relation to the Goods including transportation, loading, unloading, handling, stowage, and, where applicable either under local law or under the terms of this Bill of Lading, storing, warehousing, discharging, care and custody.
b) Carrier: means the company identified as the Carrier on the front of this Bill of Lading.
c) Container: includes any ISO standard container, flat rack, trailer, or other item of transportation equipment in conformance with ISO standards.
d) Freight: includes all charges payable to the Carrier in accordance with the applicable tariff and this Bill of Lading.
e) Goods: means the whole or any part of the cargo accepted from the Merchant and includes any Container, pallet or similar article of transport or packaging.
f) Hague Rules: means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924 as amended by the Protocol signed at Brussels on 23rd February 1968, ( the Hague-Visby Amendments) and by the Protocol signed at Brussels on December 21st 1979.
g) Merchant: includes the shipper, consignee, receiver of the Goods, any Person owning, accepting or entitled to the possession of the Goods or of this Bill of Lading including the lawful holder of the Bill of Lading and anyone acting on behalf of any such persons including non vessel operating common carriers and freight forwarders.
h) Multi-Modal Transport: arises if the place of receipt and/or the place of delivery are indicated on the face hereof in the relevant spaces.
i) Package: includes Container, flat rack, van, trailer, pallet, tank or skid. Vehicles, yachts and machinery shall be deemed to be Packages.
j) Person: includes an individual, group, company or other entity.
k) Port to Port Shipment: arises if the Carriage is not Multi-Modal Transport.
l) Sub-contractor, includes Owners and operators of Vessels (other than the Carrier), stevedores, terminal and groupage operators, Underlying Carriers and any independent contractor employed by the Carrier in performance of the Carriage.
m) Underlying Carrier includes any water, rail, motor, air or other carrier utilised by the Carrier for any part of the transportation of the shipments covered by this Bill of Lading.
n) Vessel: includes the ship named on the face of this Bill of Lading, all substituted, subcontracted and feeder vessels, and all means of sea transportation, however described, which substitute in whole or in part, for the vessel named on the face hereof.

**2. CARRIER'S TARIFF.**

The terms and conditions of the Carrier's applicable tariff are incorporated herein, including those provisions relating to Container and vehicle demurrage. Copies of the relevant provisions of the applicable tariff are obtainable upon request. In the event of any inconsistency between this Bill of Lading and the applicable tariff, this Bill of Lading shall prevail.

**3. LAW AND JURISDICTION.**

a) Shipments to and from Ports outside the United States of America (U.S.): Unless the Carrier otherwise agrees in writing, any claim by the Merchant shall be referred to the exclusive jurisdiction of the High Court of Justice, England, which shall apply English law. Any claim by the Carrier shall be referred at Carrier's sole option to the High Court of Justice, England, or to London Arbitration under the current rules of the London Maritime Arbitrators Association (LMAA), with each appointing its own arbitrator, the two so chosen appointing a third, English Law to apply. In the event of an award the arbitrators shall award simple interest.
b) Shipments to and from Ports of the U.S.: Except as provided in the second sentence hereof, any claim shall be subject to the exclusive jurisdiction of the U.S. District Court of the Southern District of New York, which shall apply U.S. Law. Notwithstanding the foregoing, at Carriers sole option, any claim hereunder may be dealt with as set out in 3(a) above
c) Notwithstanding (a) and (b) above, all shipments to and from ports of Mexico shall be subject to the exclusive jurisdiction of the Mexico City Federal Court, which shall apply Mexican Law.

**4. SUBCONTRACTING/HIMALAYA CLAUSE.**

a) The Carrier shall be entitled to sub-contract on any terms the whole or any part of the Carriage, loading, unloading, storing, warehousing, handling and any or all duties whatsoever undertaken by the Carrier in relation to the Goods
b) The Merchant undertakes that no claim or allegation whatsoever shall be made against any servant, agent, or Sub-contractor of the Carrier (including owners, operator and crew of any Vessel) which imposes or attempts to impose upon any of them, or any property or vessel owned or demised chartered by any of them, any liability whatsoever in connection with the Goods and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the aforesaid, every servant, agent and Sub-contractor shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for their benefit and in entering into this contract the Carrier, to the extent of those provisions, does so not only on his behalf, but also as agent and trustee for such servants, agents and Sub-contractors
c) In entering into this Bill of Lading contract the Carrier does so not only on it's own behalf, but also as agent and trustee for such Sub-contractors, their servants and agents.

**5. CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT.**

a) Port-to-Port Shipments.

(1) Except as provided in sub-paragraph (2), when loss or damage has occurred between the time of passing ships rail on loading of the Goods at the "Port of Loading" and the time of passing ships rail on discharge at the "Port of Discharge", then the Hague Rules shall be compulsorily applicable to this Bill of Lading. The Carrier shall be under no liability whatsoever for loss of, or damage to, the Goods, howsoever occurring, if such loss or damage arises prior to loading onto, or subsequent to the discharge from, the Vessel. Where the Carrier arranges any transportation, storage, handling or other service whatsoever in respect of the Goods prior to loading or subsequent to discharge from the Vessel, it does so solely as agent of the Merchant and at Merchants risk. Notwithstanding the foregoing, in the event that any applicable compulsory law provides to the contrary, the Carrier shall have the benefit of every right, defence, limitation and liberty set forth in the Hague Rules as applied by this Clause during such additional compulsory period of responsibility.

(2) Notwithstanding anything contained in Clause 5 (a) (1) above , in the event that this Bill of Lading covers shipments to or from the U.S., then the U.S. Carriage of Goods by Sea Act 1936 ("COGSA") shall be compulsorily applicable and shall also govern before the Goods are loaded on and after they are discharged from the Vessel provided however, that the Goods at said times are legally considered to be in the actual custody of the Carrier, an Underlying Carrier or Sub-contractor.

(b) Multi-Modal Transport.

(1)With respect to Multi-Modal Transport from, to, or within the U.S., where the Goods are in the custody of an Underlying Carrier or Sub-contractor, Carriers liability shall be governed by the provisions of Clause 5 (a) (2) above. In the event Clause 5 (a) (2) is held inapplicable to such Multi-Modal transport from, to or within the US, then Carriers liability shall be governed by and be subject to the terms and conditions of the Underlying Carrier's Bill of Lading and/or tariff which is incorporated herein as if herein set forth at length. Notwithstanding the foregoing sentence, in the event there is a private contract of carriage between the Carrier and an Underlying Carrier or Sub-contractor, such Multi Modal Transport will be governed by the terms and conditions of said contract which shall be incorporated herein as if set forth at length and copies shall be available to the Merchant at any office of the Carrier upon request. When the "Place of Receipt" box overleaf has been utilised, any notation on this Bill of Lading of "on board", "loaded on board", "shipped on board" or words to like effect, shall be deemed to mean on board the means of transportation performing the Carriage from the "Place of Receipt" to the "Port of Loading" set out overleaf.

(2)With respect to all Multi-Modal Transport outside the U.S. where COGSA is not contractually applicable, and outside Mexico, the Hague Rules shall apply whether the loss or damage occurs on land or sea.

(3)With respect to loss/damage to Goods during the portion of the Carriage as relates to road Carriage between countries in Europe, liability shall be determined in accordance with the Convention on the Contract for the International Carriage of Goods by Road, ("CMR") dated 19th May 1956, and during rail Carriage between Countries in Europe according to the International Agreement on Railway Transports ("CIM") dated 25th February 1961. With respect to loss/damage to Goods during the portion of the Carriage as relates to road or rail transportation within a State other than the U.S., then liability shall be determined in accordance with the internal law of such State and/or any International convention which is compulsorily applicable by the laws of such State. In the absence of such laws or conventions then the provisions of Clause 5 (b) (4) will apply.

(4)In the event the provisions of this subsection 5(b) (1 to 3) are held inapplicable to any aspect of the Carriage covered by local law or International Convention or otherwise, the Carrier shall nevertheless be relieved of liability for loss or damage occurring during the Carriage if such loss or damage was caused by any event which the Carrier could not avoid and the consequences whereof he could not prevent by the exercise of reasonable diligence.

(c) Subrogation. When any claims are paid by the Carrier to the Merchant, the Carrier shall be automatically subrogated to all rights of the Merchant against all others, including Underlying Carriers, on account of such loss or damage.

**6. CONTAINERS AND OPTIONAL STOWAGE.**

(a) Generally.

(1) This Bill of Lading shall at all times govern the Carrier's obligations in connection with or arising out of the supplying of a Container to the Merchant, whether before, during or after the Carriage.
(2) The Carrier may, at any time, and without notice to the Merchant, unpack and remove Goods which have been packed into a Container and forward them in another Container or otherwise.
(3) Except when Goods are containerised by the Carrier, the Merchant is solely responsible for selecting the proper type of Container for the Goods. The Carrier is not liable for any loss caused by the unfitness of the Container for Carriage of the particular Goods being shipped.
(4) Superficial rust, oxidation or condensation inside the Container or any like condition due to moisture is not the responsibility of the Carrier.
(5) The Merchant shall indemnify the Carrier against any loss, damage, liability or expense arising from any act or omission by the Merchant, his servants, or agents, arising directly or indirectly from, but not limited to, the packing or stowage of cargo in the Container or it's use including handling thereof.

(b) Carrier Supplied Containers.

(1)If Containers supplied by or for the Carrier are unpacked at the Merchant's premises, the Merchant is responsible for returning the empty Container in working condition with interiors brushed and cleaned. The Containers must be returned to the point or place designated by the Carrier within the time prescribed failing which the Merchant will be liable for all resulting direct, incidental and consequential damages including demurrage, detention and per diem charges, however designated.
(2)The Merchant's use of a Carrier supplied Container shall be conclusive proof of its sound condition and its fitness for the Goods.

(c) Merchant Packed Containers. With respect to Containers packed by the Merchant:

(1)The Merchant is solely responsible for inspecting the Container before packing to ascertain its soundness; if necessary cleaning the Container before packing; and properly packing, blocking and bracing the Goods inside the Container.
(2)The Carrier is not liable for any loss caused by any defective condition of the Container (unless the Container was supplied by the Carrier and the defect was latent), the Merchant's failure to clean the Container before packing, or the manner in which the Container has been packed.

(d) Special Container.

(1)The Carrier does not undertake to provide Goods with any special care nor to carry them in any special Container ,nor to carry any special Containers packed by or for the Merchant. Instead, the Carrier will treat such Goods as ordinary Goods and such special Container as standard dry cargo shipping Containers
(2)The Merchant's attention is drawn to the fact that refrigerated Containers are not designed to freeze or to chill down Goods which, at the time of packing into the Container, are not at or below the temperature designated for Carriage. The Carrier is not responsible for Goods which at packing are of a higher temperature than that required for Carriage.
(3)In no case does the Carrier accept responsibility for the proper functioning of special Containers supplied by or for the Merchant.
(4)Any waiver or variation of this Clause 6 (d) must be noted on the face of this Bill of Lading, but will take effect only after all Freight has been paid.

(e) Container Chassis. Except in case of Carrier supplied chassis, it is, at all times, the obligation of the Merchant, and not the Carrier, to choose the proper platform, chassis or trailer for any Container, and to properly place a Container on a platform, chassis or trailer. If any Person in the Carrier's control or employment undertakes to engage in any such activities, they shall be considered as agents or servants of the Merchant.

(f) Container seals. The Merchant undertakes to deliver Containers to the Carrier with an intact high security seal in place. In the event the Container is not so sealed, The Carrier reserves the right, at Merchant's expense, to return the Container to the Merchant for resealing, or to affix a seal. In the latter case the Carrier is deemed to be acting on the instruction of, on behalf of and as agent for the Merchant.

**7. STATEMENTS RELATING TO THE GOODS.**

a) If any particulars of a letter of credit, import licence, sales contract, invoice, order number, document or transaction to which the Carrier is not a party are shown on the face of this Bill of Lading, those particulars are included solely at the Merchant's request and for his convenience. The inclusion of those particulars is not a declaration of value and in no way affects the Carrier's liability under this Bill of Lading
b) All statements in this Bill of Lading such as "shippers weight load & count" mean that the Goods were loaded, packed or stuffed by the Merchant, and all descriptions of such Goods (including marks and numbers, number & kind of Packages, description, quantity, quality, weight, measure, nature, kind, value or any other particulars) are furnished by the Merchant and have not been checked by the Carrier.
c) The Carrier does not have the facilities to weigh sealed Containers or Packages at the load port and has neither inspected their contents nor weighed them. Any references in this Bill of Lading such as "On Board", "Shipped on Board" or "Clean on Board" relate solely to the Containers or Packages and not to their contents.
d) The Carrier shall not be liable for damages caused by non-receipt or misdescription of the Goods in this Bill of Lading under the circumstances described in this Clause 7.

**8. INSPECTION OF GOODS.**

The Carrier and any Persons authorised by the Carrier are entitled, but under no obligation, to open any Container, Package or shipping unit at any time either to inspect the contents or if requested or ordered to do so by any governmental authority. The Carrier is not liable for any loss arising out of the opening or inspection of the Goods.

CPUN BL 85 Rev. December 2005

**9. DANGEROUS/HAZARDOUS/DAMAGING, (DANGEROUS)GOODS.**

The Merchant will not tender any Dangerous Goods for Carriage without giving the Carrier prior specific written notice of their Dangerous nature, and marking the outside of the Container and Goods as required by law. If Dangerous Goods are delivered to the Carrier without marking or without his consent, they may be destroyed, disposed of, abandoned or rendered harmless without compensation to, and at the cost of the Merchant. The Carrier has no obligation to make any General Average contribution in respect of undeclared or unmarked Dangerous Goods. In addition to complying with the requirement of Clause 6, above, the Merchant shall be solely responsible for packing all Dangerous goods in a manner sufficient to comply with any law, regulations and/or international convention and adequate to withstand the risk of Carriage. Before Carriage, the Merchant must obtain from the Carrier a special stowage order giving consent to the Carriage of such Goods.

**10. REGULATIONS RELATING TO GOODS.**

The Merchant shall comply with all regulations or requirements of customs, port and other authorities and shall bear and pay all duties, taxes, imposts, expenses or losses including but not limited to those arising from delays, re-stowage and re-routing costs incurred or suffered by the Merchant, the Carrier or other parties by reason of any illegal, untimely, incorrect, unmarked, incomplete or insufficient marking, numbering, sealing, notification or addressing of the Goods and indemnify the Carrier in respect thereof. In addition to the liberties set out in Cl 10, 12 and 13 hereof, the Carrier reserves the right, at Merchants expense, to refuse to load, unload, return, re-route or otherwise dispose of any goods in respect of which the Carrier has reason to believe the Merchant has not complied with regulations regarding import or export notification or security issues.

**11. DECK CARGO.**

a) Goods, including Goods packed in Containers by the Carrier or the Merchant, may be carried on deck without notice to the Merchant. Goods, other than livestock, stowed in any covered-in-space, or packed in a Container carried on deck shall be deemed to be stowed under deck for all purposes including, where applicable, COGSA and the Hague Rules.
b) If Goods not shipped in Containers are shipped on deck according to the custom of carrying such Goods, or if the on deck Carriage is stated on the face of this Bill of Lading, then the Carrier is not liable for any loss or damage howsoever caused.
c) To the extent that Clause 11(a) or (b) is adjudged to be inapplicable or unenforceable, the Carrier shall have all defences available under this Bill of Lading or any other law including COGSA and the Hague Rules.

**12. MATTERS AFFECTING PERFORMANCE.**

a) The Carrier is under no obligation to take any particular measures with respect to the Goods. However, if at any time it appears that Carriage of all or any part of the Goods cannot safely or properly be continued at all or without incurring additional expense, or taking additional measures, then the Carrier may:
(1) abandon the Carriage of the Goods, or
(2) take any measures and incur any reasonable additional expense to continue the Carriage, to store the Goods ashore or afloat under cover or in the open, at any place
b) If at any time the Carriage is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind (other than the inability to effect safe, proper or further Carriage of the Goods), the Carrier may:
(1) without notice to the Merchant, abandon Carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier deems safe and convenient; and/or
(2) upon notice to the Merchant, suspend Carriage of the Goods and store them ashore or afloat. The Carrier will try to forward the Goods as soon as possible after the cause of the suspension has been removed, but the Carrier makes no representations or warranties as to the maximum period of time between removal of the cause of suspension and forwarding of the Goods.
c) The Carrier's abandonment or suspension of Carriage shall not end or suspend any of its defences. The Carrier's suspension of Carriage shall not affect its right to subsequently abandon Carriage.
d) In any of these situations, the Carrier shall, nevertheless, be entitled to full freight on the Goods received for transportation and the Merchant shall pay any additional cost of Carriage to and delivery and storage at any such place or port.

**13. METHODS AND ROUTE OF CARRIAGE.**

a) The Carrier may at any time and without notice to the Merchant:
(1) use any means of Carriage whatsoever,
(2) transfer the Goods from one conveyance to another including but not limited to transhipping or carrying them on a Vessel (other than that named on the face of this Bill of Lading);
(3) proceed by any route in the Carrier's discretion (whether or not the nearest or most direct or customary or advertised route), at any speed, and proceed to or stay at any place or port whatsoever, once or more often, and in any order;
(4) load, unload and/or store the Goods at any place or port (whether or not the place of delivery or port of discharge).
(5) comply with any orders, directions or recommendations given by any governmental authority, or by any body purporting to be a governmental authority, or by any Persons authorised under the terms of the insurance of the Vessel; or
(6) permit the Vessel to proceed with or without pilots, to tow or be towed, or to be dry-docked.
b) The liberties set out in Clause 13(a) may be invoked by the Carrier for any purpose whatsoever, whether or not connected with the Carriage of the Goods, including the Carriage of other Goods, bunkering, taking on stores, undergoing repairs, dry-docking, picking up or landing any Persons, towing or being towed or assisting Vessel in all situations. Anything done pursuant to Clause 13 shall not be a deviation

**14. FREIGHT.**

a) Freight has been calculated on the basis of particulars furnished by the Merchant. If those particulars are incorrect, the Merchant shall pay to the Carrier liquidated damages equal to double the correct Freight minus the Freight already paid.
b) The Merchant and the Goods are jointly and severally liable to the Carrier for the payment of Freight.
c) Full Freight is completely earned upon entry into the contract of Carriage or on receipt of the Goods by the Carrier, whichever occurs first. The Carrier is absolutely entitled to all Freight, whether paid or not, and to receive and retain the Freight under all circumstances including the Vessel and/or Goods lost or not lost, the Carriage changed, broken up, frustrated, suspended or abandoned; and lost. The Carrier's right to full Freight shall not be affected by the Carrier's exercise of any defences. Full Freight shall be paid without deduction for any counterclaim, cross-claim, offset, deduction or recoupment however described.
d) The Merchant and Goods shall be jointly and severally liable to the Carrier for the payment of all Freight, demurrage, General Average, salvage and other charges, including but not limited to, court fees, expenses and reasonable legal fees incurred in collecting the sums due to the Carrier. The Merchant's obligation to pay full Freight is not affected by the fact that this Bill of Lading may contain any of the following or similar notations: "Freight Prepaid", "C.I.F.", "C&F", "F.O.B." or by any misquotation or misinformation provided to the Merchant by the Carrier or its agent.
e) Payment of Freight to a freight forwarder, broker or anyone other than the Carrier or its authorised agent is not payment to the Carrier and shall be made at the payer's sole risk. The freight forwarder is the exclusive agent of the Merchant for all purposes.

**15. LIEN.**

The Carrier shall have a general lien on the Goods and any documents relating thereto for all sums payable by the Merchant to the Carrier under this or any other contract and for General Average contributions, to whomsoever due. The Carrier may exercise his lien at any time and in any place in his sole discretion whether the contractual voyage is completed or not. The Carrier has the right to sell the Goods at public or private sale without notice to the Merchant to satisfy the lien in whole or in part and the costs of the sale may be deducted from the proceeds by the Carrier. If the proceeds of this sale fail to cover the whole amount due, the Carrier is entitled to recover the deficit from the Merchant.

**16. NOTIFICATION AND DELIVERY.**

a) Arrival time not guaranteed: The Carrier does not undertake that the Goods shall arrive at any particular time or to meet any particular market or use. The Carrier has no responsibility for any direct, incidental, indirect or consequential loss or damage caused by delay or early arrival of the Goods.
b) Notify parties: Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for the information of the Carrier. Failure to give such notification does not impose any liability on the Carrier nor does it relieve the Merchant of any obligation under this Bill of Lading.
c) Cessation of Carrier obligations: All of the obligations in respect of the Goods shall cease upon delivery to the port of discharge or place of delivery shown on the face hereof, or upon expiration of free time, which ever occurs first. After expiration of free time (but without prejudice to any Carrier liens on the Goods and subject to Cl 4 above), the terminal or warehouseman will hold the Goods exclusively as bailee and agent of the Merchant. In any event the Carrier's responsibility shall cease when the Goods have been delivered to the Merchant or inland carriers or any other person entitled to receive the Goods on his behalf at the place designated by the Carrier Delivery to the custody of customs or any other authority shall constitute final discharge of the Carrier's responsibility hereunder.
d) Expiration of free time: Once free time has expired, the Goods will be stored at a warehouse or receiver's terminal at the sole risk and expense of the Merchant and the Goods. However, if the Carrier believes that the Goods are likely to deteriorate, decay, lose value or incur storage or other charges in excess of their value, the Carrier may, without notice to the Merchant, publicly or privately sell or dispose of the Goods and apply the proceeds of the disposition in reduction of the Freight.
e) Goods shipped in Carrier supplied Containers: If the Merchant neglects, fails or refuses to take custody of Goods shipped in a Carrier supplied Container in the time period provided by this Clause 16, the Carrier may unpack the Goods from the Container at the sole risk of the Merchant. Upon unpacking, the Carrier has the right to full use and possession of the Container.
f) Goods shipped in Merchant packed Containers: If a Container packed by the Merchant is delivered by the Carrier with the seal affixed by the Merchant intact, such delivery shall constitute full and complete performance by the Carrier under this Bill of Lading and under law. The Carrier is not liable for any shortage or differences asserted at or after delivery. The Carrier shall also have the benefit of this Clause 16 (f) where the Merchant affixed seal has been removed by any governmental authority, including Customs, at the port of discharge or place of delivery.
g) Full Container load ("FCL") combined transport: Goods will be delivered to the Merchant in a Container only if all Bills of Lading in respect of the contents of the Container are surrendered authorising delivery to a single Merchant at a single place. If this requirement is not fulfilled, the Carrier may unpack the Container and deliver Goods to the Merchant against the respective corresponding Bills of Lading on a less than full Container load ("LCL") basis. Such delivery will only be made against payment by the Merchant of LCL service charges; any other charges for LCL Goods provided by the Carrier's applicable tariff; and the Carrier's actual cost for additional services rendered.
h) Merchant's duty to take delivery. Refusal by the Merchant to accept delivery of goods including damaged Goods and/or mitigate damages shall constitute a waiver by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the Carriage thereof.

**17. NOTICE OF CLAIM AND TIME FOR SUIT.**

Unless notice of loss or damage and the general nature of such loss or damage is given in writing to the Carrier at the Port of Discharge or Place of Delivery before or at the time of delivery of the Goods, or, if the loss or damage is not apparent, within three (3) days after delivery, the Goods shall be deemed to have been delivered as described in this Bill of Lading. In any event, where the provisions of clauses 5 and 20 herein apply, the Carrier shall be discharged from all liability whatsoever in respect of the Goods, unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. In all other instances, the Carrier shall be discharged from all liability whatsoever in respect of the Goods, unless suit is brought within nine (9) months after delivery of the Goods or the date when the Goods should have been delivered.

**18. GENERAL DISCLAIMERS AND LIMITATION OF LIABILITY.**

a) All claims for which the Carrier may be liable shall be adjusted and settled on the basis of the lower of the net invoice value of the Goods plus Freight and insurance (if paid), or the applicable market value at the Port of Discharge or Place of Delivery. In no event shall the Carrier be liable for any loss of profit or any consequential loss or costs incurred in replacing lost or damaged Goods. The Carrier has the option, but not the obligation, to replace lost Goods or repair damaged Goods.
b) Where the provisions of 5(a)(2) are compulsorily or contractually applicable to the bill of lading, the carrier shall in no event be liable for loss or damage to or in connection with Goods in an amount exceeding $500 US per package or per shipping unit where the Goods are not shipped in packages. In all other circumstances the Carrier shall in no event be liable for loss or damage to or in connection with the Goods in an amount exceeding the lesser of US $ 2.50 per kilo, or US$500 per Package or per shipping unit where the Goods are not shipped in Packages. If such limitation is inapplicable under the local law in which an action is brought, then the Hague Rules (Unamended) limitation of £100 sterling lawful money of the United Kingdom per Package or shipping unit shall apply, or alternatively, if the shipment covered by this Bill of Lading originates in a country where the Hague-Visby Amendments to the Hague Rules are mandatorily applicable, Carriers liability shall not exceed 2 SDR per kilo or 666.67 SDR per Package or shipping unit whichever is the greater.
c) In the absence of any compulsorily applicable law to the contrary, the Carrier shall be entitled to the full benefit of the 1976 Convention on Limitation of Liability for Maritime Claims.
d) The aforementioned limitations of liability set forth in Clause 18 (b) shall be applicable unless the nature and value of the Goods have been declared by the Merchant before shipment and agreed by the Carrier, and are inserted in this Bill of Lading and the applicable "ad valorem" Freight rate, as set out in the Carrier's tariff, is paid. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value and if the declared value is higher than the actual value, the Carrier shall in no event be liable to pay more than the shippers invoice value of the Goods plus Freight and Insurance

**19. GENERAL AVERAGE. (GA)**

a) GA to be adjusted in US Dollars at any place selected by the Carrier and according to the York/ Antwerp Rules 1974 as amended in 1990. Any claims and/or disputes relating to GA shall be exclusively subject to the Laws and Jurisdictions set out in Clauses 3 and 5 above. Any period of time bar shall start to run from the date of issue of the GA adjustment.
b) If the Carrier delivers the Goods without obtaining security for GA contributions, the Merchant by taking delivery of the goods, undertakes personal responsibility to pay such contributions and to provide such cash deposit or other security for the estimated amount of such contributions as the Carrier shall reasonably require. The same to apply to any contribution of the goods in any salvage and/or special charges.
c) The Carrier has no obligation to declare GA, nor to exercise any lien for GA contributions due to the Merchant.

**20. VALIDITY AND SUPERCESSION.**

In the event that anything contained herein is inconsistent with any applicable international convention or national law which cannot be departed from or varied by private contract, the provisions hereof shall be null and void to the extent of such inconsistency and no further. Unless otherwise specifically agreed in writing between the Parties to this Bill of Lading, the terms and conditions of this Bill of Lading supersede any prior negotiations, discussions, course of conduct or agreements between the Merchant and the Carrier.

**21. BOTH TO BLAME COLLISION CLAUSE (BIMCO), NEW JASON CLAUSE, WAR RISKS CLAUSES 1 AND 2** are deemed to be incorporated in this Bill of lading. Copies of the aforesaid Clauses are available at Carrier's local offices.