IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| AMADI NWOKOCHA, | * | |
| Plaintiff, | * | |
| | | Civil Action No.: |
| v. | * | 1:07-cv-00861-AMD |
| KALICO EXPORTS, INC., | * | |
| CP SHIPS, | * | |
| HAPAG-LLOYD (America) Inc., | * | |
| And | * | |
| HAPAG-LLOYD AG, | * | |
| Defendants. | * | |
| * * * | * * | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

**Introduction**

In its opening motion, Defendants moved to dismiss or transfer venue under Fed. R. Civ. P. 12(b) (3) and/or 28 U.S.C. § 1406(a). This Amended Motion adds an additional basis for venue transfer under 28 U.S.C. § 1404(a).

This Memorandum addresses two areas. First, it discusses a series of cases analyzing whether or not a Defendant can seek dismissal or venue transfer under the streamlined provisions of Fed. R. Civ. P. 12(b)(3) and/or 28 U.S.C. § 1406(a) after removing a case from state court. Second, in light of these cases, this Memorandum demonstrates that this Court can transfer venue to the Southern District of New York under 28 U.S.C. § 1404(a).

1

After filing its motion, and while making initial preparation for oral argument, Defendants' counsel identified several cases, including at least one in this Court, that Plaintiff did not discuss or address. As an officer of the Court, counsel felt it imperative to bring these cases to this Court's attention since they arguably stand for the proposition that the venue transfer provisions embodied in Fed. R. Civ. P. 12(b) (3) and/or 28 U.S.C. § 1406(a) (the statutes cited by Defendants' original motion) are no longer available in light of Defendants' removal of this case from state court. As discussed below, it is Defendants' position that these cases are inapposite since this is a maritime action. Still, they could nonetheless be viewed as precluding relief under the authority cited by the Defendants' initial motion.

Although those cases appear to preclude dismissal or transfer of venue under the provisions cited in Defendants' original motion, this does not mean, however, that Defendants' waived their right to file a venue transfer motion. As discussed in its opening memorandum, this is a maritime action and the Supreme Court's decision in <u>Sky Reefer</u> and its progeny control. Those cases unequivocally state that forum selection clauses contained in bills of lading must be given credence. They further make clear that a plaintiff must bear the burden of proving that the forum selection clause is unduly onerous. Furthermore, the factors enunciated by 28 U.S.C. § 1404(a) require transfer to the Southern District of New York.

**Argument**

I. **Case Law Discussing the Right to Dismiss or Transfer Venue under Fed. R. Civ. P. 12(b)(3) or 28 U.S.C. § 1406(a)**

Plaintiff's opposition to Defendants' initial motion argues that Defendants' removal amounts to a waiver of the right to challenge venue in this District. This is wrong. Removal is not tantamount to a waiver of the right to challenge venue. The process is, however, more nuanced in a post-removal situation.

When preparing for oral argument, counsel identified a series of cases which hold that removal of an action from state court limits the available statutory basis for challenging venue to 28 U.S.C. § 1404(a). At least three of the cases are published -- the Eleventh Circuit's decision in Hollis v. Florida State University, 259 F.3d 1295 (11th Cir. 2001), this Court's decision in Three M  v. Texas D.A.R., 368 F. Supp.2d 450 (D. Md. 2005) (Bennett, J.), and Godfredson v. JBC Legal Group, 387 F. Supp.2d 543 (E.D. N.C. 2005).

Relying on the Supreme Court's somewhat myopic and Talmudic parsing of 28 U.S.C. § 1446(a), in Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953), these cases conclude that "By requiring removal to the district court for the district in which the state action is pending, Section 1441(a) 'properly fixes the federal venue in that district.'" Three M, 368 F. Supp.2d at 455 (citing, Hollis v. Florida State Univ., 259 F.3d 1295, 1300 (11th Cir. 2001)). See also, Godfredson, 387 F. Supp.2d at 555-556 ("Venue for a removed action is fixed, instead, by the removal statute, 28 U.S.C. § 1441(a), which limits venue to 'the district court of the United States for the district and division embracing the place where such action is pending.'" (quoting Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953))).

3

Because venue is fixed, these cases conclude that a case cannot be dismissed under Fed. R. Civ. P. 12(b)(3) or transferred under 28 U.S.C. § 1406(a). <u>See</u> <u>e.g.</u> <u>Three M</u>, 368 F. Supp.2d at 456 ("For similar reasons, Defendants' alternative Motion to Transfer pursuant to 28 U.S.C. § 1406(a) is without merit. Section 1406(a) provides that 'the district court of a district in which is filed a case *laying venue in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought.' (Emphasis supplied). Yet, as previously discussed, this Court is the proper venue for the instant action, as a matter of law.").

Although the aforementioned cases would appear to be controlling, they are not. In fact, they are inapposite. They involved civil actions predicated upon either diversity or Federal question jurisdiction. They were not admiralty or maritime claims with a bill of lading choice of venue clause like this case.

As noted in Defendants' petition for removal, this case concerns a civil action or proceeding arising under Federal Maritime Law, 46 U.S.C. § 30706 (The Harter Act) and 49 U.S.C. § 14706 (The Bill of Lading Act). Indeed, even though Plaintiff never plead the case in admiralty, this is irrelevant, since Fed. R. Civ. P. 9(h) makes abundantly clear that "If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not."

Because this is an admiralty case, the general venue provisions and statutes do not apply. Wright, Miller & Cooper state:

> It was held more than a century ago that admiralty cases are not civil actions, within the meaning of the venue statutes. These proceedings are governed by their own distinctive rules of venue, unhampered by statute. This tradition was preserved when procedure in admiralty was unified

> with civil procedure in 1966. Civil Rule 82, as amended in that year, provides that if an action is an admiralty or maritime action within the meaning of Civil Rule 9(h) it shall not be treated as a civil action for purposes of the general venue statutes.

15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3817 (citations and footnotes omitted).

Although Federal courts often cite the general venue rules in reaching admiralty venue decisions, the application of those rules is governed by Federal maritime jurisprudence not jurisprudence like Polizzi, Hollis, Three M and their progeny. In other words, the ruminations regarding the import of removal on venue in a standard civil case do not apply to this type of case. Indeed, if this Court were to apply standard civil jurisprudence like Polizzi, it would be reaching a decision that flies in the face of controlling maritime case law, particularly the Supreme Court's decision in Vimar Seguos Y Reaseguros, S.A. v M/V Sky Reefer, 515 U.S. 528 (1995), which makes abundantly clear that forum selection clauses found in bills of lading should be applied except in the most unusual of circumstances.

This very issue was addressed by the United States District Court for the Central District of California in Tokio Marine & Fire Insurance Co., Ltd. V .Nippon Express U.S.A. (Illinois) et al., 118 F. Supp. 2d 997 (C.D. Cal. 2000), aff'd on other grounds, 45 Fed. Appx. 710 (9th Cir. 2002). Just like this case, a steam ship line removed a case from state court and then moved to dismiss or transfer the action for improper venue in light of the bill of lading's forum selection clause. Id. at 998. The Court found that Polizzi and its progeny "are inapplicable because neither addressed the applicability of a forum selection clause." Tokio Marine, 118 F. Supp. at 999. The Court further found that "substantial authority exists demonstrating that forum selection clauses are often

enforced, and actions transferred or dismissed, after removal." Id. (citing Spradlin v. Lear Siegler Mgmt. Svcs. Co., Inc., 926 F.2d 865, 868-69 (9th Cir. 1990)).

**II.     Removal Does Not Waive the Right to Transfer Venue**

    A.     This Case Can Be Transferred Under 28 U.S.C. § 1404(a)

Even if this Court finds that the aforementioned cases are not inapposite, this case can nonetheless be transferred to the Southern District of New York under 28 U.S.C. § 1404(a). Three M and the Eleventh Circuit in Hollis, both conclude that removal does not waive a party's right to seek venue transfer. Along these lines, the Eleventh Circuit found "that it is 'unnecessary and confusing' to construe Section 1441(a), 'as have some courts and commentators, that a defendant who removes a case to federal court waives any venue challenges.'" Three M, 368 F. Supp.2d at 456 n. 4 (quoting Hollis v. Florida State University, 259 F.3d 1295, 1300 (11th Cir. 2001)).

Indeed, to conclude that removal is tantamount to a complete waiver of the right to challenge venue would render the venue challenge provisions provided to litigants by Congress a nullity. Thus, the Eleventh Circuit held that precluding dismissal or transfer under Fed. R. Civ. P. 12(b)(3) or 28 U.S.C. §1406(a) "does not mean that a defendant in a removed action is left without options if it believes that a case can be better litigated and tried in another division or district. As did, FSU, a defendant can seek a transfer under § 1404(a)." Hollis, 259 F.3d at 1300. See also Godfreson, 387 F. Supp. 2d at 556 ("The Hollis court noted that a defendant in a removed action, if it believes that the case can be better litigated or tried in another court, has the option of seeking transfer pursuant to 28 U.S.C. § 1404(a)"); Tanzman v. Midwest Express Airlines, 916 F.Supp. 1013, 1018 (S.D. Cal. 1996) ("Indeed, it has been stated that 'it is well settled that the filing of a

6

removal petition in a diversity action, without more, does not waive the right to object in federal court to the state court venue.' Lambert v. Kysar, 983 F. 2d 1110, 1113 n. 2 (1st Cir. 1993)." (Additional internal citations omitted)).

    B.    This Case Should Be Transferred Under 28 U.S.C. § 1404(a)

    1.    The Interests of Justice Counsel in Favor of Transfer to the Southern District of New York

28 U.S.C. § 1404(a) provides that cases may be transferred for the convenience of the parties and witnesses and in the interest of justice. Although a motion for transfer rests within the sound discretion of the Court, the maritime nature of this case clearly counsels in favor of venue transfer.

Plaintiff's argument that transferring this action to New York would, to quote Plaintiff, "contravene strong public policy" is flatly wrong. (See Pl.'s Mem. ¶10d and ¶10e). In fact, two of Plaintiff's primary supporting cases, Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1962) and Carnival Cruise Lines v. Shute, 499 U.S. 585 (1972) actually *enforced* forum selection clauses. To this end, Bremen held that "in light of present-day commercial realities and expanding international trade we conclude that forum selection clauses should control absent a strong showing that it should be set aside." Bremen, 407 U.S. at 15. See also Carnival Cruise Lines, 499 U.S. at 591.

Another case cited by Plaintiff in support of its "public policy" argument, Red Bull Associates v. Best Western Int'l, 862 F.2d 963 (2nd Cir. 1988), is not only inapposite, it actually supports Defendants' motion to transfer. (See Pl.'s Mem. ¶ 10(d)).

Red Bull was not a maritime case like this one. It was a civil rights case. In fact, in discussing the difference between civil rights cases and maritime cases, the Red Bull

7

court went to great lengths to distance civil venue cases from maritime venue cases, noting that the facts in Red Bull were "outside the admiralty realm." Red Bull, 862 F.2d at 966. Thus, the Court stated:

> *Bremen* was an admiralty case in which the Supreme Court considered the weight accorded a choice-of-forum provision in an international towage contract. The court held that such a clause is *prima-facie* valid unless the party challenging it clearly shows that "enforcement would be unreasonable and unjust." Bremen, 407 U.S. at 15
>
> The Supreme Court has since decided Stewart Organization, Inc. v. Ricoh Corp, 487 U.S. 22 (1988), in which it concluded that, outside the admiralty realm, § 1404(a) transfer motions are not governed by the standard articulated in *Bremen* but by the terms of § 1404(a) itself.

Red Bull, 862 F.2d at 966.

The Court should not overlook an important statement in this reasoning. Plaintiff's cited Red Bull case actually supports the enforcement of the forum selection clause, finding that the Supreme Court's Bremen decision stands for the proposition that a forum selection clause "is *prima-facie* valid unless the party challenging it shows that 'enforcement would be unreasonable and unjust.'" Id. As demonstrated throughout this brief, Plaintiff has not met this burden of proof.

In addition to citing inapposite cases or case law that actually supports venue transfer, Plaintiff alleges three other reasons why he believes this Court should retain this action. First, Plaintiff allegedly did not receive the bill of lading until after he paid for the shipment. Second, Plaintiff avers that the forum selection clause was allegedly inconspicuous and buried in fine print and, as a result, Plaintiff lacked notice of its terms. Third, Plaintiff alleges that the bill of lading constituted an improper contract of adhesion. (See Pl.'s Mem. ¶9 and ¶10).

8

Defendants dispute the factual veracity of each of these three arguments. Nonetheless, even if they were true, none of them can carry the day as a matter of law.

Plaintiff's first argument is easily dispatched as nonsensical. Plaintiff argues that he did not receive the bill of lading until after he paid for the shipment. (Opp. Brf. ¶10b). This makes perfect sense. Until Plaintiff made the final payment, he did not have a contract with Defendant at all, only an unenforceable agreement to agree. Plaintiff admits that he received the bill of lading after he provided the necessary consideration. (See Opp. Brf. ¶10 b).

Furthermore, even if Plaintiff *never* received the bill of lading, its terms would still control. In fact, the Fifth Circuit has gone so far as to hold that even when no bill of lading has been issued, but the parties intended to enter into a contract for the carriage of goods, the bill of lading terms control. Luckenbach S.S. Co. v. American Mills Co., 24 Fed 2d 704, 705 (5th Cir. 1928) holds that even when no bill of lading is issued, or the bill is delayed, a party like the Plaintiff "is presumed to know the law, and therefore must have known that the terms and conditions on which its goods were received and would be transported would be contained in a bill of lading to be issued later. In these circumstances, it cannot be inferred that it was the intention of the parties to enter into a contract that would bind the carrier as insurer; but an implied understanding arose from common business experience that the carrier would issue such a bill of lading as was its custom to issue to shippers in the usual course of its business." Id. (citing The Caledonia (C.C.), 157 U.S. 124, 139 (1895)). See also Garnay Inc. v. M/V LINDO MAERSK, 816 Fed. Sup. 888, 893-94 (S.D.N.Y. 1993); Royal Insurance Company v. Sealand Service Inc., 50 Fed 3rd 723, 728-29 (9th Cir. 1995) (As long as a provision is in a carrier's form

9

bill of lading such that a shipper interested in knowing its terms would be able to see it, it is irrelevant whether the shipper had actual knowledge of it).

Plaintiff's second argument that he was unaware of the venue selection clause because it was contained "in fine print" in a "take or leave it contract" is also of no moment. (See Pl.'s Mem ¶10b and ¶10c). Black letter law holds that a shipper is conclusively presumed to have knowledge of a carrier's tariff rules and regulations which include the publication of the carrier's forum selection clauses found in the bill of lading. Kansas City Southern Railway v. Carl, 227 U.S. 639, 653 (1913). In fact, Plaintiff could have found the terms of the bill of lading on Defendant Hapag-Lloyd's website since Section 8(a)(1)(E) of the Shipping Act of 1984 as amended by the Ocean Shipping Reform Act, requires that the conditions of the carrier's bill of lading be published in the carrier's website tariff.

Plaintiff's third argument that the bill of lading amounts to an inequitable contract of adhesion is also easily dispatched since it has been rejected outright by the Supreme Court on at least two separate occasions. (See Pl.'s Mem ¶10 c). In Sky Reefer, the Supreme Court cited with approval the District Court's conclusion that an adhesion argument lacks merit since "Congress defined the arbitration agreement enforceable under the [Federal Arbitration Act] to include maritime bills of lading . . . ." Sky Reefer, 512 U.S. at 532. Similarly, in Carnival Cruise Lines v. Shute, 499 U.S. 585, 591 (1991) the Supreme Court rejected an argument that a forum selection clause printed on the back of a cruise ship ticket constituted an inequitable adhesion contract particularly since "standardized form contracts account for a significant portion of all commercial agreements." Id.

10

The Supreme Court has also made clear that even if a forum selection clause is part of, to quote Plaintiff, a " take it or leave it" form contract, this does not make it unreasonable. In Carnival the Supreme Court made abundantly clear that "we do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining." Carnival, 499 U.S. at 593.

In fact, the Carnival court held that it is completely reasonable and a valid for a large commercial carrier like a cruise line or the Defendants in this case to insist on forum selection clauses in their form contracts. Citing reasons that are equally valid in this case, the Supreme Court it held, in pertinent part, that:

> Including a reasonable forum clause in a form contract of this kind well may be permissible for several reasons: First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. See The Bremen, 407 U.S., at 13, and n. 15; Hodes, 858 F. 2d, at 913. Additionally, a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. See Stewart Organization, 487 U.S. at 33 (concurring opinion). Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued. Cf. Northwestern Nat. Ins. Co. v. Donovan, 916 F. 2d 372, 378 (CA7 1990).

Carnival, 499 U.S. at 593-94.

2.   Other 28 U.S.C. § 1404(a) Factors Argue in Favor of Transfer

Other factors analyzed by courts under Section 1404(a) also counsel in favor of transfer to the Southern District of New York. In addition to the interests of justice, case

11

law holds that in "determining whether to grant a motion to transfer, courts are to consider:  1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; [and], 3) convenience of the parties." Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615 (D.Md. 2002).

The first issue is easily dispatched.  Given that this is a maritime case, the weight of case law makes abundantly clear that plaintiff's choice of forum cannot withstand scrutiny under the Supreme Court's clear instructions in Sky Reefer that forum selection clauses contained in bills of lading should be enforced.  Indeed, because this case involves a maritime forum selection clause, the usual burden of proof under 28 U.S.C. § 1404(a) is reversed and "even where the forum clause established a remote forum for the resolution of conflicts, 'the party claiming [unfairness] should bear a heavy burden of proof.'" Carnival, 499 U.S. at 593 (citing Bremen, 407 U.S. at 17) (quotations and brackets in original)).  As has been amply demonstrated, Plaintiff has not, and cannot, meet this "heavy burden." Id.

The second issue, convenience of the witnesses, is also easily dispatched. Plaintiff argues that because the contract and the shipment originated in Baltimore, this is the most convenient venue for the witnesses.  (See Op. Mem. at ¶ 9).  This makes no sense.

In the first place the fact that the contract may have been signed in Baltimore is completely irrelevant.  No one disputes that there is a contract for the carriage of goods. This case turns on whether cargo covered by the contract for carriage of goods was damaged during shipment.  Baltimore has nothing to do with the issue at hand since the cargo left Baltimore, traveled all over the world, and was allegedly damaged during the

12

voyage.

Furthermore, even a cursory glance at the shipping documents reveals that the majority of the witnesses will not be found in this District. There is no dispute that the cargo at issue was shipped via container to Nigeria aboard the M/V ATLANTIC PROJECT. (See Comp. ¶ 7). The vessel was not loaded in Baltimore. It was loaded in New York (Newark), was allegedly transshipped to a feeder vessel in Tema, Ghana, West Africa (See Comp. ¶ 10). The cargo ultimately ended its journey in Nigeria where the Plaintiff discovered the alleged damage or loss. Given the nature of the case, it is absurd to argue that Baltimore is the most convenient forum when the witnesses who handled the cargo during transit are most likely in New York, Tema, and Nigeria. See also Complaint ¶ 11.

The convenience of the parties also does not favor Baltimore. Although Plaintiff and one of the exporting agents live in Baltimore, the steamship line is a German Corporation with a New York subsidiary, the individuals who loaded the cargo on the vessel are in New York, and the shipment commenced its ocean journey from New York. Furthermore, travel to New York is not difficult for Plaintiff. Indeed, Amtrak's Northeast Corridor schedule has a train that departs for New York almost hourly.

Carnival makes clear that it is not inherently unreasonable to make a party litigate in another state. If anything, the Carnival plaintiffs were subjected to far greater difficulty than the plaintiff here. The Supreme Court held that those Plaintiffs would have to travel half way across the country from the State of Washington to Florida to litigate their claim. See Carnival, 499 U.S. at 594. In this case, Plaintiff need only go to New York.

To put it bluntly, New York is not a "remote alien forum" from this District. Nor is this dispute an essentially Baltimore-based claim more suited to resolution in this District given the indisputable fact that the shipment clearly spent a substantial amount of time in numerous places other than Baltimore. As noted above, the Shipment went to New York, was loaded on the vessel in New York, and traveled all the way to Nigeria. See e.g. Carnival, 499 U.S. at 594-95 ("In the present case, Florida is not a 'remote alien forum,' nor – given the fact that Mrs. Shute's accident occurred off the coast of Medico – is this dispute an essentially local one inherently more suite to resolution in the State of Washington than in Florida."). This is not a Baltimore-based claim in any sense of the word. In short, therefore, this action should be transferred to the Southern District of New York in conformity with the Bill of Lading's forum clause.

## Conclusion

For the foregoing reasons, Defendants CP Ships, Hapag-Lloyd (America) Inc., and Hapag-Lloyd AG respectfully submit that this action should be dismissed under Fed. R. Civ. P. 12(b)(3) for lack of venue. In the alternative, Defendants respectfully request that this Court transfer venue pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York.

[Signature on following page]

<u>/s/   W. Charles Bailey, Jr.</u>
W. Charles Bailey, Jr. (#23580)
J. Stephen Simms (#4269)
Donna Davis Ebaugh
SIMMS SHOWERS LLP
20 S. Charles Street
Suite 702
Baltimore, MD  21201
Telephone:     (410) 783-5795
Facsimile:      (410) 783-1368

Counsel for Defendants,
CP Ships, Hapag-Lloyd (America) Inc.
and Hapag-Lloyd AG

15