IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| Amadi Nwokocha, | * | |
| Plaintiff, | * | |
| | | Civil Action No.: |
| v. | * | 1:07-cv-00861-AMD |
| KALICO EXPORTS, INC, | * | |
| CP SHIPS, | * | |
| HAPAG-LLOYD (America) Inc., | * | |
| and | * | |
| HAPAG-LLOYD AG, | * | |
| Defendants | * | |

\* \* \* \* \*

**DEFENDANTS CP SHIPS, HAPAG-LLOYD (AMERICA) INC. AND HAPAG-LLOYD AG'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' AMENDED MOTION TO DISMISS FOR LACK OF VENUE**

**INTRODUCTION**

In its Amended Brief, Defendants CP Ships, Hapag-Lloyd (America), Inc. and Hapag-Lloyd AG demonstrated that this action should be dismissed or transferred to the Southern District of New York for lack of venue. Defendants specifically demonstrated that the bill of lading contains an unequivocal forum selection clause stating that any lawsuit must be brought in the United States District Court for the Southern District of New York.

1

Notwithstanding Plaintiff's express contractual obligations, Plaintiff opposes Defendants' dismissal motion. As discussed below, Plaintiff has failed to meet the "heavy burden" necessary to void the forum selection clause contained in the bill of lading. As a result, this case should be dismissed or transferred to the Southern District of New York.

## ARGUMENT

A.  Case Law Holds that Forum Selection Clauses in Bills of Lading are Prima-Facie Valid and Should Be Enforced Unless Plaintiff Meets Its "Heavy Burden" of Showing That the Clause is Invalid

In its opening memorandum, Defendants demonstrated that the bill of lading contains an unequivocal forum selection clause. Paragraph 3(a) states:

> Shipments to and from ports of the U.S:
>
> Except as provided in the second sentence hereof, *any claim shall be subject to the exclusive jurisdiction of the U.S. District Court for the Southern District of New York, which shall apply U.S. Law*. Notwithstanding the foregoing, at Carrier's sole option, any claim hereunder may be dealt with as set out in 3(a) above.

(Emphasis added).

Defendants further demonstrated that Supreme Court and Fourth Circuit case law unequivocally hold that forum selection clauses should be enforced in virtually all cases. In Allen v. Lloyds of London, 94 F.3d 923, 928 (4th Cir. 1996), the Fourth Circuit held that "[s]ince its seminal decision in The Bremen v. Zapata Off-Shore Co., 407 U.S 1, 32 L.Ed.2d 513, 92 S. Ct. 1907 (1972), the Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity, rejecting the 'parochial concept' that 'notwithstanding solemn contracts . . . all disputes must be resolved under our laws and in our courts.'"

2

Defendants further demonstrated that the Supreme Court's opinion in <u>Vimar Seguros Y Rease Guros, S.A. v. M.V. Sky Reefer</u>, 515 U.S. 528 (1995) ("<u>Sky Reefer</u>") holds clear that forum selection clauses contained in bills of lading should be applied except in the most unusual circumstances.  Defendants' amended Brief further demonstrated that "even where the forum selection clause establishes a remote forum for resolution of conflicts, 'the party claiming [unfairness] should bear a heavy burden of proof.'"  <u>Carnival</u>, 499 U.S. at 592 (quoting <u>Bremen</u>, 407 U.S. at 17).

Plaintiff's Amended Opposition boils down to five arguments in support of its position that the forum selection clause here should be voided.  As discussed below, they all fail to meet its "heavy burden."

(1)     Plaintiff argues that the forum selection clause resulted from "fraud" because Plaintiff did not receive the bill of lading until after he paid for the shipment.  (Opp. at ¶ 10(b)).  This argument lacks merit.

In the first place, Plaintiff does not allege that Hapag-Lloyd, Hapag-Lloyd (America) or CP ships failed to provide him with a copy of the bill of lading.  Rather, he alleges that another party, Kalico Exports, failed to provide him a copy of the bill of lading.  (<u>See</u> Amended Opp. at ¶ 10b).  That party has no relation to Defendants, and their actions cannot be imputed to them.

Furthermore, as noted in Defendants' Amended Motion, and utterly ignored by Plaintiff in its Amended Reply, this so called "fraud" argument makes no sense. Plaintiff had no right to the bill of lading until after he paid for the shipment.  As demonstrated in Hapag's Amended Brief, Plaintiff had no contractual relationship with Hapag Lloyd because the necessary consideration for the contact had not been exchanged.  Once the

3

consideration was exchanged, Plaintiff admits that he did, in fact, receive the bill of lading. (See initial Opposition Brief at ¶ 10(b)).

Furthermore, failure to provide a party with a bill of lading does not constitute fraud. Indeed, as noted in Defendants' Amended Brief, case law holds that, even if Plaintiff never received the bill of lading, its terms would nonetheless control. The Federal Bill of Lading Act mandates that all contracts for the carriage of goods be subject to a bill of lading. Thus, the weight of case law holds that since a party "is presumed to know the law, [it] therefore, must have known that the terms and conditions on which its goods are received and would be transported would be contained in a bill of lading to be issued later. In these circumstances, it cannot be inferred that it was the intention of the parties to enter into a contract that would bind the carrier as insurer; but an implied understanding arose from common business experience that the carrier would issue such a bill of lading as was its custom to issue to shippers in the usual course of its business." Id. (citing The Caledonia (C.C.), 157 U.S. 124, 139 (1895)). See also Garnay Inc. v. M/V LINDO MAERSK, 816 Fed. Sup. 888, 893-94 (S.D.N.Y. 1993); Royal Insurance Company v. Sealand Service Inc., 50 Fed 3rd 723, 728-29 (9th Cir. 1995) (As long as a provision is in a carrier's form bill of lading such that a shipper interested in knowing its terms would be able to see it, it is irrelevant whether the shipper had actual knowledge of it).

(2)     Plaintiff also doggedly insists that the forum selection clause should not be enforced because it was contained "in fine print" in a "take or leave it contract." This argument also cannot carry the day. (See Amended Opp. at 4).

4

In the first place, the forum selection clause was in the same font as all the other clauses contained in the bill of lading. It wasn't "buried" as Plaintiff says.

In the second place, Plaintiff ignores the unequivocal fact that shippers are conclusively presumed to have knowledge of a carrier's tariff rules and regulations, which include the forum selection clause. Kansas City Southern Railway v. Carl, 227 U.S. 639, 653 (1913).

In the third place, Hapag Lloyd did not attempt to hide this, or any other clause, in the bill of lading. In fact, if Plaintiff was truly concerned about the clauses contained in the bill of lading, he could have reviewed its terms on Hapag-Lloyd's website since section 8(a)(1)(E) of the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act, requires that bill of lading conditions be published on the website. In short, if Plaintiff really wanted to know the terms of the bill of lading, they were readily available for review.

(3)     Plaintiff's third argument is also easily dispatched since it, too, fails to satisfy Plaintiff's heavy burden of proof. Plaintiff argues that this Court should ignore the forum selection clause because he believes that Hapag-Lloyd had "overwhelming and overreaching bargaining power." (See Amended Opp. at 4).

As demonstrated in Defendants' Amended brief, and completely ignored by Plaintiff, this argument has been expressly rejected by the Supreme Court in at least two cases. Sky Reefer held that the adhesion contract argument lack merit because Congress included maritime bills of lading in the Federal Arbitration Act. Sky Reefer, 512 U.S. at 532. In other words, Congress has explicitly accepted the fact that a carrier can include a "take or leave it" arbitration with an attendant forum selection clause in the bill of lading.

Likewise, in Carnival Cruise Lines, the Supreme Court upheld another "take it or leave it," to use Plaintiff's phrasing, forum selection clause printed on the back of a cruise ticket. There the Court held that since "standardized form contracts account for a significant portion of all commercial agreements," it does not make sense to conclude that they are voidable adhesion contracts. Carnival Cruise Lines, 499 U.S. at 591.

 (4) In its Amended Reply, Plaintiff also argues that transferring this case to New York would contravene public policy because, transfer would, to quote Plaintiff, "deprive a claimant of a 'trial by court of competent jurisdiction' for loss of life or personal injury from negligence." (Pl.'s Amended Opp. at 4-5). This argument makes no sense. This case is not a claim for "loss of life or personal injury." This case is a cargo loss/damage claim.

 (5) Citing the Supreme Court's decision in Carnival, Plaintiff also argues that the forum selection clause violates public policy because, to quote Plaintiff again, it is "fundamentally unfair" because it constitutes "a bad faith tactic to discourage the pursuit of legitimate claims." (See Pl.'s Am. Opp. at ¶ 10(e)). In a similar vein, Plaintiff argues that transfer to New York violates public policy because the United States District Court for the District of New York is "not a court of competent jurisdiction." (See Pl.'s Am. Opp. at ¶ 10(d)). At another juncture, Plaintiff argues that traveling to New York is so inconvenient that he would be "deprived of his day in court." (Pl.'s Amended Op. at ¶ 10(e)).

Notwithstanding their clear overreaching, these arguments ignore controlling case law. In Allen, the Fourth Circuit held that venue transfer can only be considered unfair or a court "not a court of competent jurisdiction" when "the complaining party 'will for

6

all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; [or] the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy." Allen, 94 F.3d at 928.

      Neither of the factors cited by the Fourth Circuit applies here. Transferring this case to the Southern District of New York will not "deprive the plaintiff of a remedy." That court is clearly competent to litigate a cargo damage case. Furthermore, even if Plaintiff's claim does include issues outside of the cargo damage area, none of them are outside of the competence of the Southern District of New York. (See Pl.'s Am. Opp. at ¶ 9, averring that he has raised claims for "intentional misrepresentation, negligent misrepresentation, and promissory estoppel.")

      Likewise, New York is not so inconvenient that Plaintiff will be deprived of his day in court. Even if Plaintiff does work in the District of Columbia he can get to New York quite conveniently. Amtrak runs every hour. Furthermore, filing pleadings in New York is also simple, since, like this Court, the Southern District of New York has an online electronic case filing system.

      Moreover, to hold that New York is inconvenient for a Washington, D.C. plaintiff flies in the face of numerous other cases where the courts have found it convenient for plaintiffs to travel much farther distances than what Plaintiff would be required to travel here. Thus, as noted in Defendants' Amended brief, the Supreme Court held in Carnival that it was not inconvenient for plaintiffs living in Washington State to travel to Florida to litigate their personal injury claims. See Carnival Cruise Lines, 499 U.S. at 594. Other cases, like Bremen and Sky Reefer have transferred cases to other nations.

Indeed, it bears mentioning that "The Court in <u>Sky Reefer</u> even questioned whether American courts should consider attempts to defeat choice of forum clauses based on inconvenience" since such an analysis "would be unwieldy and unsupported by the terms or policy of the statute to require courts to proceed case by case to tally the costs and burdens to particular plaintiffs in light of their means, the size of their claims, and the relative burden on the carrier." <u>Pasztory v. Croatia Line et. al.</u>, 918 F. Supp. 961, 968 (E.D. Va. 1996) (citing <u>Sky Reefer</u>, 515 U.S. at 537).

(6) This Court should also bear in mind that Plaintiff ignores Defendants' prior demonstration that the Supreme Court's <u>Carnival</u> decision holds that there are strong public policy reasons for enforcing forum selection clauses like the one at issue here. These include, "[a defendant's] special interest in limiting the fora in which it potentially could be subject to suit," the "salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding these motions," and the cost savings to Defendant's customers resulting from "the savings that [Defendant] enjoys by limiting the fora in which it may be sued." <u>Carnival Cruise Lines</u>, 499 U.S. at 593-94 (internal quotations and citations omitted).

    B.    Other 28 U.S.C. § 1404(a) Factors Counsel in Favor of Transferring Venue to the Southern District of New York

Plaintiff's Amended Opposition brief wholly ignores Defendants' demonstration that 28 U.S.C. § 1404(a)'s factors also favor transferring venue to the Southern District of New York.

In the first place, Plaintiff is simply wrong to assert, without any argument whatsoever, that removing the case from state court waives the right to seek venue transfer. See Am. Opp. ¶ 11. Defendants' Amended Brief discussed in great detail the unequivocal fact that removal from state court does not bar a Defendant from seeking to have a case transferred to another district. (See Defendants' Amended Memorandum at 3-7). Since Plaintiff never discusses Defendants' case law on this point, there is no need to rehash the same arguments raised in the Amended Brief. See also Lynch v. Vanderhoef Builders, 237 F.Supp.2d 615, 617 (D.MD. 2002) ("As an initial matter, the Court notes that the fact that the case was removed from the state court to this Court does not bar Defendants from seeking to have the case transferred to another district. *See Piekarski v. Home Owners Sav. Bank, 743 F. Supp. 38, 42 (D. D.C. 1990)*.").

Plaintiff also does not refute Defendants' prior demonstration "the weight accorded the plaintiff's choice of venue" is of no moment here. ( Defs.' Amended Brief at 12). As Defendants have amply demonstrated, the maritime nature of this case actually flips the usual burden of proof. Thus, when a plaintiff litigates in a venue other than the one mandated by the bill of lading, contract, it is the plaintiff, not the defendant, who has the burden of proving that his choice of forum is proper. As discussed in Defendants' opening brief, as well as above, Plaintiff cannot carry the day on this point.

Plaintiff also has not demonstrated that the convenience of the witnesses counsels in favor of keeping this case in Baltimore. Plaintiff has only identified one potential witness who is at least tangentially connected to Maryland: himself.[1] (See Pl.'s Amended Opp. at ¶ 10(f)). This is simply not enough to carry the day. Indeed, Plaintiff

---

[1] It bears mentioning that Plaintiff avers that he works in the District of Columbia not Maryland. See below.

9

has completely ignored Defendants' prior demonstration that, because this is an international shipment of goods, Baltimore is largely irrelevant to the resolution of the claim. The shipping documents make abundantly clear that the vessel was loaded in New York, it was allegedly transshipped in Tema, Ghana, West Africa (Complaint ¶ 10), and ended its journey in Nigeria. In short, this is a worldwide shipment of goods, with potential witnesses spread across the globe. Baltimore is not the most convenient forum, nor are the majority of witnesses located here.

Furthermore, the convenience of the parties does not favor Baltimore. Once again, Plaintiff takes an essentially myopic view, arguing that since he contracted in Baltimore, the case should remain here. At the outset, it should be noted that Plaintiff avers that, since he works in the District of Columbia, traveling to New York is inconvenient. (See Amended Opp. Brief at ¶ 10(f). Thus, at least from Plaintiff's perspective, it appears that he doesn't even spend the majority of his time in the District of Maryland. He spends it in the District of Columbia. Furthermore, there are other parties who are not in this District. The Defendant is a German steamship line, with a New York Office. The vessel called in New York, and the people who loaded the vessel are in New York. In short, there is no evidence that this District is more convenient for the parties than New York.

Finally, the interests of justice do not favor keeping this case in Maryland. As discussed in detail above, the interests of justice actually tip in favor of transferring venue in accordance with the forum selection clause since the Plaintiff, not the Defendants, has "the heavy burden of proof." Bremen, 407 U.S. at 17.

10

Moreover, Plaintiff will not suffer any injustice if he must litigate in New York. According to the case law, injustice occurs when transfer of venue is "so manifestly and gravely inconvenient to [Plaintiff] that [he] will effectively be deprived of a meaningful day in court . . . ." Bremen, 407 U.S. at 19. This is simply not the case here. New York is not a remote alien forum and it certainly is competent to litigate this case.

Finally, the shipment traveled all over the world. It did not stay in Baltimore. In short, this is not a claim where this District has an overwhelming interest in maintaining the litigation. As such, this case should be transferred to the Southern District of New York.

## **Conclusion**

For the foregoing reasons, Defendants CP Ships, Hapag-Lloyd (America) Inc., and Hapag-Lloyd AG respectfully submit that this action should be dismissed under Fed. R. Civ. P. 12(b)(3) for lack of venue. In the alternative, Defendants respectfully request that this Court transfer venue pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York.

[Signature on following page]

/s/   W. Charles Bailey, Jr.
W. Charles Bailey, Jr. (#23580)
J. Stephen Simms (#4269)
Donna Davis Ebaugh
SIMMS SHOWERS LLP
20 S. Charles Street
Suite 702
Baltimore, MD  21201
Telephone:     (410) 783-5795
Facsimile:     (410) 783-1368

Counsel for Defendants,
CP Ships, Hapag-Lloyd (America) Inc.
and Hapag-Lloyd AG

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2007, I caused a copy of the foregoing Defendants CP Ships, Hapag-Lloyd (America) Inc., and Hapag-Lloyd AG's Reply to Plaintiff's Opposition to Defendants' Amended Motion to Dismiss for Lack of Venue to be served on Plaintiff, KALICO EXPORTS, INC., via First Class United States Mail, as follows:

KALICO EXPORTS, INC.
Serve on Resident Agent:
Ukebu U. Kalu
2305 Westfield Avenue
Baltimore, MD  21224

and on counsel for Plaintiff, Amadi Nwokocha,

Uduak J. Ubom
Obinna Duruji
Umbom Law Firm PC
7600 Georgia Avenue, N.W.
Suite 410
Washington, DC   20012

13

via the Courts electronic case filing system.

              /s/ W. Charles Bailey, Jr.
              W. Charles Bailey, Jr. (#23580)