8929/SHV

CICHANOWICZ, CALLAN, KEANE,
VENGROW & TEXTOR, LLP
Attorneys for Defendants CP Ships, Hapag-Lloyd (America) Inc. and Hapag-Lloyd AG

61 Broadway, Suite 3000
New York, New York 10006-2802
(212) 344-7042

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMADI NWOKOCHA
9824 Matzon Road
Baltimore, MD 21220

Plaintiff,

V.

KALICO EXPORTS, INC.
7107 Commercial Avenue
Baltimore, MD 21237

CP SHIPS
399 Hoes Lane
Piscataway, NJ 08854

HAPAG-LLOYD (AMERICA) INC.
399 Hoes Lane
Piscataway, NJ 08854

HAPAG-LLOYD AG
Ballindamm 25
20095 Hamburg

Defendants.

Civil Action 07 CV 8597

**DECLARATION OF
ARNE KLOCKMANN
IN SUPPORT OF THE DISMISSAL
MOTION OF DEFENDANTS CP SHIPS,
HAPAG-LLOYD (AMERICA) INC.
AND HAPAG-LLOYD AG**

Arne Klockmann declares the following:

1.    I am a Claims Manager for Hapag-Lloyd (America) Inc.

2.    Hapag-Lloyd (America) Inc. acts as an agent for Hapag-Lloyd AG
(hereinafter collectively referred to as "Hapag-Lloyd").

3.    The attached Bill of Lading (front and back) is a true and accurate copy of Bill of Lading #ATLRL016630 and marked as Exhibit A.

4.    I drafted the telefax dated November 22, 2006 which is also designated as plaintiff's Exhibit P9 in the original Complaint.

5.    Attached is a true and accurate copy of that telefax marked as Exhibit B.

6.    The Telefax was drafted to the plaintiff's attorney Obinna Duruji, Esq. without prejudice to all of the rights and defenses that Hapag-Lloyd could claim. I confirmed the receipt of the documents and further advised that Hapag-Lloyd (America) Inc. was still investigating the matter and that we would get back to him as soon as we finished our investigation.

7.    I neither orally nor in writing assured plaintiff's counsel that the carrier would compensate the plaintiff for the alleged cargo damage or delay.

8.    I neither orally nor in writing advise plaintiff's counsel that the claims would be paid and that they should not file a Complaint.

9.    I neither orally nor in writing ever advise plaintiff's counsel that Hapag-Lloyd or Hapag-Lloyd AG would not contest the timeliness of any Complaint filed by plaintiff.

10.    I never entered into any type of settlement negotiations or spoke of any money that Hapag-Lloyd would pay on the claim.

11.    I neither orally nor in writing agreed to extend the time for plaintiff to file a Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      January 17, 2008

/Arne Klockmann

# EXHIBIT A

**Lykes Lines** LYKES LINES, A DIVISION OF CP SHIPS USA, LLC
www.lykeslines.com

# EXPRESS BILL

| SHIPPER/EXPORTER (complete name and address)<br>OCEANE MARINE SHIPPING, INC<br>1770 RISING MIST LANE<br>CUMMING, GA 30041 | BOOKING NO<br>ATLRL01663 | BILL OF LADING NO<br>ATLRL016630 |
|---|---|---|
| | EXPORT REFERENCES<br>OUR REFERENCE#: 251094 | CUSTOMER REFERENCE |

| CONSIGNEE (not negotiable unless consigned to order)<br><br>UCHE NWOKOCHA<br>42 FAGBENRO SQ<br>OFF RANDALL AVENUE<br>SURE-LERE LAGOS NIGERIA | FORWARDING AGENT<br>OCEANE MARINE SHIPPING, INC<br>1770 RISING MIST LANE<br>CUMMING, GA 30041 | FMC NO | CHB NO |
|---|---|---|---|

| NOTIFY (complete name and address)<br>SAME AS CONSIGNEE | ALSO NOTIFY - ROUTING & INSTRUCTIONS |
|---|---|

| * PRE-CARRIAGE BY | *PLACE OF RECEIPT BY PRE-CARRIER | POINT (STATE) OR ORIGIN OR FTZ NUMBER | | |
|---|---|---|---|---|
| VESSEL/VOYAGE<br>ATLANTIC PROJECT    006S | PORT OF LOADING<br>NEW YORK | LOADING PIER/TERMINAL<br>NEW YORK | | |
| PORT OF DISCHARGE<br>TEMA | *PLACE OF DELIVERY BY ONCARRIER<br>CINCAN ISLAND-LAGOS | TRANSPORT MODE<br>CY -CY | TARIFF NO   /   SERVICE CONTRACT NO<br>019627-367 5877 | |
| * Applicable only when used in multimodal service. | | PARTICULARS FURNISHED BY SHIPPER | | |

| SHIPMENT CODE -MARKS & NUMBERS<br>CONTAINER & SEAL NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | 1 | X 40'HC CONTAINER<br>SHIPPERS WEIGHT LOAD AND COUNT<br><br>2000 MITSUBISHI TRUCK<br>VIN JA4MT31H3YP035806<br><br>2000 TOYOTA 4 RUNNER<br>VIN JT3HN86R6Y0300893<br><br>2000 TOYOTA 4S<br>VIN 4T1BG22K8YU741320<br><br>180 PIECES<br>HOUSEHOLD GOODS/PERSONAL EFFECTS<br><br>NO SED REQUIRED-AESXTN:<br>582286382-251094 | | |
| CN: CMUU4614892<br>SN1: 6622370 | | 183 PIECE(S)<br><br>EXPRESS B/L:AT REQUEST OF SHIPPER NO ORIGINAL BILL OF LADING ISSUED. THIS COPY<br>TO SERVE AS CARRIER'S RECEIPT FOR GOODS AND CONTRACT OF CARRIAGE. | 4535 970KG<br>10000.000LB | |

CONTINUED ON PAGE:    2

Received in apparent good order and condition (unless otherwise stated herein) the total number of containers or other packages or units indicated above. In accepting this document, albeit without signing it himself, the merchant expressly agrees and accepts that carriage is subject to all the terms and conditions, including the terms and conditions, on the reverse hereof, whether written, printed, stamped or otherwise incorporated and the terms and conditions of the carrier applicable tariff particularly as regards CONTAINERS AND VEHICLE DEMURRAGE. Carriage to be from the Place of Receipt or the Port of Loading, to the Port of Discharge or Place of Delivery, whichever is applicable. The carrier has the right to ship Goods on deck as per clause 11. FOR BILLS OF LADING, if the carrier so requires, below its agreement delivery of the Goods, one original bill of lading, duly endorsed, must be surrendered by the merchant to the carrier, in witness whereof, the number of original stated below have been issued, one of which being accomplished, the other(s) to be void. FOR SEA WAYBILLS/EXPRESS BILLS. The Goods shipped under this Sea Waybill will be delivered to the party named above as consignee or his/it's authorized agents, on production of proof of identity without any documents formalities. Delivery otherwise than to the party and at the place set out above, at the request of the consignee, may be agreed by the carrier but subject always to the shippers agreement. The carrier to exercise due care, ensuring that delivery is made to the proper party, however, in case of incorrect delivery, no responsibility will be accepted unless due to fault or neglect on the part of the carrier. All references to "Bill of Lading" in this document should be taken to read "Sea Waybill" / "Express Bill" when applicable.

| FREIGHT CHARGES    PAY AT | RATE BASIS | PREPAID | COLLECT | Declared Cargo Value $         , If Merchant enters a value carrier's limitation of liability shall not apply and the ad valorem rate will be charged. See clause 18 and carrier's tariff |
|---|---|---|---|---|
| FREIGHT CHARGES    TAMPA | 2740.00 CTR | 2740.00USD | | |
| BUNKER ADJUSTMENT TAMPA | 850.00 CTR | 850.00USD | | NO. OF ORIGINAL B(s)/L    NONE<br>BILL OF LADING NO    ATLRL016630<br>*********************<br>*** NON-NEGOTIABLE ***<br>********************* |
| | | | | PLACE OF ISSUE                DATE<br>TAMPA, FL            21 NOV 05 |
| | | | | By: CP SHIPS<br><br>As Agents for the Carrier |
| TOTAL CHARGES | | 3590.00USD | | LYKES LINES  A DIVISION OF CP SHIPS USA, LLC<br>401 E. Jackson Street<br>Tampa , FL, 33602 USA  SCAC: LYKL |

PAGE: 2

**Lykes Lines** LYKES LINES, A DIVISION OF CP SHIPS USA, LLC
www.lykeslines.com

# EXPRESS BILL

| SHIPPER/EXPORTER (complete name and address)<br>OCEANE MARINE SHIPPING. INC<br>1770 RISING MIST LANE<br>CUMMING, GA 30041 | BOOKING NO<br><br>ATLRL01663 | BILL OF LADING NO<br><br>ATLRL016630 |
|---|---|---|
| | EXPORT REFERENCES<br>OUR REFERENCE#: 251094 | CUSTOMER REFERENCE |

| CONSIGNEE (not negotiable unless consigned to order)<br><br>UCHE NWOKOCHA<br>42 FAGBENRO SQ<br>OFF RANDALL AVENUE<br>SURE-LERE LAGOS NIGERIA | FORWARDING AGENT<br>OCEANE MARINE SHIPPING, INC.<br>1770 RISING MIST LANE<br>CUMMING, GA 30041 | FMC NO | CHB NO |
|---|---|---|---|

| NOTIFY (complete name and address)<br>SAME AS CONSIGNEE | ALSO NOTIFY - ROUTING & INSTRUCTIONS |
|---|---|

| *PRE-CARRIAGE BY | *PLACE OF RECEIPT BY PRE-CARRIER | POINT (STATE) OF ORIGIN OR FTZ NUMBER | | |
|---|---|---|---|---|
| VESSEL/VOYAGE<br>ATLANTIC PROJECT     006S | PORT OF LOADING<br>NEW YORK | LOADING PIER/TERMINAL<br>NEW YORK | | |
| PORT OF DISCHARGE<br>TEMA | *PLACE OF DELIVERY BY ONCARRIER<br>CINCAN ISLAND-LAGOS | TRANSPORT MODE<br>CY -CY | TARIFF NO    /    SERVICE CONTRACT NO<br>019627-367 5877 | |
| *Applicable only when used in multimodal service. | | PARTICULARS FURNISHED BY SHIPPER | | |

| SHIPMENT CODE -MARKS & NUMBERS<br>CONTAINER & SEAL NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | | "FREIGHT PREPAID"<br>ON BOARD 11/21/05<br>THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES<br>IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO<br>U.S. LAW PROHIBITED. ULTIMATE DESTINATIONLAGOS, | | |

Received in apparent good order and condition (unless otherwise stated herein) the total number of containers or other packages or units indicated above. In accepting this document, albeit without signing it himself, the merchant expressly agrees and accepts that carriage is subject to all the terms and conditions, including the terms and conditions, on the reverse hereof, whether written, printed, stamped or otherwise incorporated and the terms and conditions of the carriers applicable tariff particularly as regards CONTAINER AND VEHICLE DEMURRAGE. Cartage to be from the Place of Receipt or the Port of Loading, to the Port of Discharge or Place of Delivery, whichever is applicable. The carrier has the right to ship Goods on deck as per clause 11. FOR BILLS OF LADING, if the goods or invoices, before be enforced delivery of the Goods are adopted bill of lading, duly endorsed, shall be surrendered by the merchant to the carrier. In witness whereof, the number of originals stated below have been issued, one of which being accomplished, the other(s) to be void. FOR SEA WAYBILL/EXPRESS BILLS, The Goods shipped under this Sea Waybill will be delivered to the party named above as consignee or it's authorized agent, on production of proof of identity without any documents formalities. Delivery otherwise than to the party and at the place set out above, or the request of the consignee, may be agreed by the carrier but subject always to the shipper agreement. The carrier to exercise due care, ensuring that delivery is made to the proper party, however, in case of incorrect delivery, no responsibility will be accepted unless due to fault or neglect on the part of the carrier. All references to "Bill of Lading" in this document should be taken to read "Sea Waybill" / "Express Bill" when printing See Waybills / Express Bills.

| FREIGHT CHARGES     PAY AT | RATE BASIS | PREPAID | COLLECT | Declared Cargo Value $                        . If Merchant enters a value<br>carrier's limitation of liability shall not apply and the ad valorem<br>rate will be charged. See clause 16 and carrier's tariff. |
|---|---|---|---|---|
| | | | | NO. OF ORIGINAL Bls/L       NONE<br>BILL OF LADING NO    ATLRL016630<br>***********************<br>*** NON-NEGOTIABLE ***<br>*********************** |
| | | | | PLACE OF ISSUE                              DATE<br>TAMPA, FL                          21 NOV 05 |
| | | | | By: CP SHIPS<br><br>As Agents for the Carrier |
| TOTAL CHARGES | | | | LYKES LINES, A DIVISION OF CP SHIPS USA LLC<br>401 E Jackson Street<br>Tampa , FL, 33602 USA  SCAC: LYKL |

Note. Where this document is issued for use in accordance with Inland Intermodal Service, all restrictions of ITS applicable (of course these "<del>Document</del>" will continue, except these "<del>Document</del>" in DANGEROUS/ODOROUS/ODOROUS GOODS).

Case 1:07-cv-08597-SAS Document 12 Filed 01/30/2008 Page 7 of 9

**1. DEFINITIONS.** As used in this Document:

a) Carriage; means any undertaking by the Carrier in relation to the Goods including transportation, loading, unloading, handling, stowage, and, where applicable either under local law or under the terms of this Bill of Lading, storage, warehousing, discharging, care and custody.

b) Carrier; means the company identified on the Carrier on the front of this Bill of Lading.

c) Container; includes any ISO standard container, flat rack, trailer, or other item of transportation equipment in conformance with ISO standards.

d) Freight; includes all charges payable to the Carrier in accordance with the applicable tariff and this Bill of Lading.

e) Goods; means the whole or any part of the cargo accepted from the Merchant and includes any Container, pallet or similar article of transport or packaging.

f) Hague Rules; means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924 as amended by the Protocol signed at Brussels on 23rd February 1968, ( the Hague-Visby Amendments) and by the Protocol signed at Brussels on December 21st 1979.

g) Merchant; includes the shipper, consignee, receiver of the Goods, any Person owning, accepting or entitled to the possession of the Goods or of this Bill of Lading including the lawful holder of the Bill of Lading and anyone acting on behalf of any such persons including any vessel operating common carriers and freight forwarders.

h) Multi-Modal Transport; arises if the place of receipt and/or the place of delivery are indicated on the face hereof in the relevant spaces.

i) Package; includes Container, flat rack, van, trailer, pallet, crate or skid. Vehicles, packets and machinery shall be deemed to be Packages.

j) Person; includes an individual, group, company or other entity.

k) Port to Port Shipment; arises if the Carriage is not Multi-Modal Transport.

l) Sub-contractor; includes Owners and operators of Vessels (other than the Carrier), stevedores, terminal and groupage operators, Underlying Carriers and any independent contractor employed by the Carrier in performance of the Carriage.

m) Underlying Carrier; includes any water, rail, motor, air or other carrier utilized by the Carrier for any part of the transportation of the shipments covered by this Bill of Lading.

n) Vessel; includes the ship named on the face of this Bill of Lading, all substituted, subcontracted and feeder vessels, and all means of sea transportation, how-ever described, which substitutes in whole or in part, for the vessel named on the face hereof.

**2. CARRIER'S TARIFF.**

The terms and conditions of the Carrier's applicable tariff are incorporated herein, including those provisions relating to Container and vehicle demurrage. Copies of the relevant provisions of the applicable tariff are obtainable upon request. In the event of any inconsistency between this Bill of lading and the applicable tariff, this Bill of Lading shall prevail.

**3. LAW AND JURISDICTION.**

a) Shipments to and from Ports outside the United States of America (U.S.). Unless the Carrier otherwise agrees in writing, any claim by the Merchant shall be referred to the exclusive jurisdiction of the High Court of Justice, England, which shall apply English law. Any claim by the Carrier shall be referred at Carrier's sole option to the High Court of Justice, England, or to London Arbitration under the current rules of the London Maritime Arbitrators Association (LMAA), with such appointing its own arbitrator. In the event of arbitration being so appointed a third, English Law to apply. In the event of an arrest the arbitrators shall award security interest.

b) Shipments to and from Ports of the U.S.: Except as provided in the second sentence hereof, any claim shall be subject to the exclusive jurisdiction of the U.S. District Court of the Southern District of New York, which shall apply U.S. Law. Notwithstanding the foregoing, a Carriers sole option, any claim hereunder may be dealt with as set out in 3(a) above.

c) Notwithstanding (a) and (b) above, all shipments to and from ports of Mexico shall be subject to the exclusive jurisdiction of the Mexico City Federal Court, which shall apply Mexican Law.

**4. SUBCONTRACTING/HIMALAYA CLAUSE.**

a) The Carrier shall be entitled to sub-contract on any terms the whole or any part of the Carriage, loading, unloading, storing, warehousing, handling and any or all duties whatsoever undertaken by the Carrier in relation to the Goods.

b) The Merchant undertakes that no claim or allegation whatsoever shall be made against any servant, agent, or Sub-contractor of the Carrier (including owners, master and crew of any Vessel) which imposes or attempts to impose upon any of them, or any property or vessel owned or deemed chartered by any of them, any liability whatsoever in connection with the Goods and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the aforesaid every servant, agent and Sub-contractor shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for their benefit and in entering into this contract the Carrier, to the extent of these provisions, does so not only on his behalf, but also as agent and trustee for such servants, agents and Sub-contractors, their servants and agents.

**5. CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT.**

a) **Port to Port Shipments.**

(1) Except as provided in sub-paragraph (2), when loss or damage has occurred between the time of passing ships rail on loading of the Goods at the "Port of Loading" and the time of passing ships rail on discharge at the "Port of Discharge", then the Hague Rules shall be compulsorily applicable to this Bill of Lading. The Carrier shall be under no liability whatsoever for loss of, or damage to, the Goods, howsoever arising, if such loss or damage occurs prior to loading onto, or subsequent to discharge from, the Vessel. When the Carrier arranges sea transportation, storage, handling or other service whatsoever in respect of the Goods prior to loading or subsequent to discharge from the Vessel, it does so solely as agent of the Merchant and as Merchants risk. Notwithstanding the foregoing, in the event that any applicable compulsory law provides to the contrary, the Carrier shall have the benefit of every right, defence, limitation and liberty set forth in the Hague Rules as applied by this Clause during such additional compulsory period of responsibility.

(2) Notwithstanding anything contained in Clause 5 (a) (1) above , in the event that this Bill of Lading covers shipments to or from the U.S., then the U.S. Carriage of Goods by Sea Act 1936 ('COGSA') shall be compulsorily applicable and shall also govern before the Goods are loaded on and after they are discharged from the Vessel provided however, that the Goods at said times are in the custody of the actual Carrier or the Carrier, an Underlying Carrier or Sub-contractor.

b) **Multi-Modal Transport.**

(1) With respect to Multi-Modal Transport from, to or within the U.S., where the Goods are in the custody of an Underlying Carrier or Subcontractor, Carriers liability shall be governed by the provisions of Clause 5 (a) (2) above. In the event Clause 5 (a) (1) is held inapplicable to such Multi-Modal transport then, in or within the US, then Carriers liability shall be governed by and be subject to the terms and conditions of the Underlying Carrier's Bill of Lading and/or tariff which is incorporated herein as if herein set forth at length. Notwithstanding the foregoing sentence, in the event there is a private contract of carriage between the Carrier and an Underlying Carrier or Sub-contractor, such Multi-Modal Transport will be governed by the terms and conditions of said Private contract or tariff as if herein set forth at length and copies will be made available to the Merchant at any office of the Carrier upon request. When the "Place of Receipt" is specified herein, any notation on this Bill of Lading of "loaded on board", "shipped on board" or words to this effect, shall be deemed to mean received by the Carrier at the "Place of Receipt" for purposes performing the Carriage from the "Place of Receipt" to the "Port of Loading" as noted on this Bill of Lading.

(2) With respect to all Multi-Modal Transport outside the U.S. where COGSA is not continuously applicable, and outside Mexico, the Hague Rules shall apply to before the Goods are loaded on and after they are damaged occurs on land or in the sea voyage whether it can be proved where the loss or damage occurred.

(3) With respect to Multi-Modal Transport from, to or within the U.S., during all Carriage between Countries in Europe, liability shall be determined in accordance with the Convention on the Contract for the International Carriage of Goods by Road ('CMR') dated 19th May 1956 and during all Carriage between Countries in Europe according to the International Agreement on Railway Transports ('CIM') dated 25th February 1961. With respect to such Carriage to Goods during the portion of the Carriage in which a road or rail transportation within a State other than the U.S., then liability shall be determined in accordance with the internal law of such State under any International convention which is compulsorily applicable by law of such State. In the absence of such laws or conventions that the provisions of Clause 5 (b) (4) will apply.

(4) In the event the provisions of this subsection 5(b) (1) to 3 are held inapplicable to any part of the Carriage covered by this Bill of Lading by operation of law, International convention, or applicable national law, or under any International convention or otherwise, which is the subject of any compulsorily liability for loss or damage whatsoever proven – whereof he could not prevent by the exercise of reasonable diligence.

c) **Subrogation.** When any claims are paid by the Carrier to the Merchant, the Carrier shall be automatically subrogated to all rights of the Merchant against all others, including Underlying Carriers, on account of such loss or damage.

**6. CONTAINERS AND OPTIONAL STOWAGE.**

a) **Generally.**

(1) This Bill of Lading shall at all times govern the Carrier's obligations in connection with or arising out of the supplying of a Container to the Merchant whether before, during or after the Carriage.

(2) The Carrier may, at any time, and without notice to the Merchant, unpack and remove Goods which have been packed into a Container and forward them in another Container or otherwise.

(3) Except when Goods are containerized by the Carrier, the Merchant is solely responsible for entering the proper type of Container for the Goods. The Carrier is not liable for any loss caused by the unfitness of the Container for Goods being shipped.

(4) Specialized rate, stabilizes or condensation inside the Containers or with the condition due to readiness is not the responsibility of the Carrier.

(5) The Merchant shall indemnify the Carrier against any loss, damage, liability or expense arising from any act or omission by the Merchant, his servants, or agents, arising directly or indirectly from, but not limited to, the packing or stowage of cargo in the Container or if it was including handling thereof.

b) **Carrier Supplied Containers.**

(1)) Containers supplied by or to the Carrier are unpacked at the Merchant's premises, the Merchant is responsible for returning the empty Container in working condition with interiors brushed and cleaned. The Containers must be returned to the point or place designated by the Carrier within the time prescribed failing which the Merchant will be liable for all resulting direct, incidental and consequential damages including demurrage, detention and per diem charges, however designated.

(2)The Merchant's use of a Carrier supplied Container shall be conclusive proof of its sound condition and its fitness for the Goods.

c) **Merchant Packed Containers.** With respect to Containers packed by the Merchant:

(1)The Merchant is solely responsible for inspecting the Container before packing to ascertain its soundness; if necessary cleaning the Container before packing; and properly packing, blocking and bracing the Goods inside the Container.

(2)The Carrier is not liable for any loss caused by any defect or condition of the Container unless the Container was supplied by the Carrier and the defect was latent; the Merchant's failure to clean the Container before packing; or the manner in which the Container has been packed.

d) **Special Container.**

(1)The Carrier does not undertake to provide Goods with any special care nor to carry them in any special Container , not to carry any special Containers packed by or for the Merchant. Instead, the Carrier will treat such Goods as ordinary Goods and accept them for cargo-shipping Containers.

(2)The Merchant's attention is drawn to the fact that refrigerated Containers are not designed to freeze or to chill down Goods which, at the time of packing into the Container, are not at or below the temperature designated for Carriage. The Carrier is not responsible for Goods which at packing are of a higher temperature than that required for Carriage.

(3)In no case does the Carrier accept responsibility for the proper functioning of special Containers supplied by or for the Merchant.

(4)Any waiver or variation of this Clause 6 (d) must be noted on the face of this Bill of Lading, but will take effect only after all Freight has been paid.

(e) Container Contents. Except in case of Carrier supplied chassis, it is, at all times, the obligation of the Merchant, and not the Carrier, to observe the proper placement, chassis or trailer for any Container, and to comply with any law, regulation, or provision in effect regarding weight or employment undertaken to engage in any such activities, they shall be considered as agents or servants of the Merchant.

(f) Container risks. The Merchant undertakes to deliver Containers to the Carrier with an intact high security seal in place. In the event the Container is not so sealed, The Carrier reserves the right, at Merchant's expense, to open the Container so the Merchant for inspecting, or to affix a seal. In the latter case the Carrier is deemed to be acting on the instruction of, on behalf of and as agent for the Merchant.

**7. STATEMENTS RELATING TO THE GOODS.**

a) If any particulars of a letter of credit, import licence, sales contract, invoice, order number, documentary remittances or other particulars in which the Carrier is not a party are shown on the face of this Bill of Lading, these particulars are included at the Merchant's request and for his convenience. The inclusion of these particulars is not a declaration of value and in no way affects the Carrier's liability under this Bill of Lading.

b) All references in this Bill of Lading such as "shippers weight load and count" pertain to Merchant packed Containers or trailers. The Merchant acknowledges, and all descriptions of such Goods (including marks and numbers, number & kind of Packages, Description, quantity, quality, weight, measure, nature, kind, value or any other particulars) are furnished by the Merchant and have not been checked by the Carrier.

c) The Carrier does not have the facilities to weigh sealed Containers or Packages at the load port and has neither inspected their contents nor weighed them. Any references in this Bill of Lading such as "On Board", "Shipped on Board" or "Clean on Board" relate solely to the Containers or Package and not to their contents.

d) The Carrier shall not be liable for damages caused by non-receipt or misdescription of the Goods in this Bill of Lading under the circumstances described in this Clause 7.

**8. INSPECTION OF GOODS.**

The Carrier and any Person authorized by the Carrier are entitled, but under no obligation, to open any Container, Package or shipping unit at any time either to inspect the contents or if required or referred to do so for any governmental authority or otherwise. The Carrier is not liable for any loss arising out of the opening or inspection of the Goods.

CPUN BL 85 Rev. December 2003

**9. REGULATIONS RELATING TO GOODS.**

The Merchant shall comply with all regulations or requirements of customs, port and other authorities and shall bear and pay all duties, fines, imports, expenses or losses including but not limited to those arising from delays, re-stowage and re-routing costs incurred or suffered by the Merchant, the Carrier or other parties by reason of any illegal, untimely, incorrect, insufficient, incomplete or insufficient marking, numbering, nailing, notification or addressing of the Goods and indemnify the Carrier in respect thereof. In addition to the liberties set out in Cl 10, 11 and 12 hereof, the Carrier reserves the right, at Merchants expense to; refuse to load, unload, return, re-route or otherwise dispose of any goods in respect of which the Carrier has reason to believe the Merchant has not complied with regulations regarding import or export notification or security issues.

**10. DECK CARGO.**

a) Goods, including Goods packed in Containers by the Carrier or the Merchant, may be carried on deck without notice to the Merchant. Goods, other than livestock, stowed in any covered-in-space, or packed in a Container carried on deck shall be deemed to be stowed under deck for all purposes including, where applicable, COGSA and the Hague Rules.

b) If Goods are shipped in Containers are shipped on deck according to the custom of carrying such Goods, or if the on deck Carriage is stated on the face of this Bill of Lading, then the Carrier is not liable for any loss or damage howsoever caused.

c) To the extent that Clause 10(a) or (b) is adjudged to be inapplicable or unenforceable, the Carrier shall have all defences available under this Bill of Lading or any other law including COGSA and the Hague Rules.

**11. MATTERS AFFECTING PERFORMANCE.**

a) The Carrier is under no obligation to take any particular measures with respect to the Goods. However, if at any time it appears that Carriage of all or any part of the Goods cannot safely or properly be continued at all or without incurring additional expense, or taking additional measures, than the Carrier may:

(1) abandon the Carriage of the Goods ; or

(2) take any measures and incur any reasonable additional expense to continue the Carriage to store the Goods ashore or afloat under cover or in the open, at any place

b) If at any time the Carriage is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind (other than the inability to effect safe, proper or further Carriage of the Goods), the Carrier may:

(1) without notice to the Merchant, abandon Carriage of the Goods and place them at the Merchant's disposal or at any place or port which the Carrier deems safe and convenient; and/or

(2) upon notice to the Merchant, suspend it, for the Carrier will deem such notice as silent. The Carrier will try to forward the Goods as soon as possible after the cause of the suspension has been removed, but the Carrier makes no representations or warranties as to the maximum period of time between removal of the cause of suspension and forwarding of the Goods.

c) The Carrier's abandonment or suspension of Carriage shall not and cannot suspend any of its liabilities. The Carrier's suspension of Carriage shall not affect its right to subsequently abandon Carriage.

d) In any of these situations, the Carrier shall, nevertheless, be entitled to full freight on the Goods received for transportation and the Merchant shall pay any additional cost of Carriage to and delivery and storage of any such place or port.

**13. METHODS AND ROUTE OF CARRIAGE.**

a) The Carrier may at any time and without notice to the Merchant:

(1) use any means of Carriage whatsoever;

(2) transfer the Goods from one conveyance to another including but not limited to transshipping or carrying them on a Vessel other than that named on the face of this Bill of Lading;

(3) proceed by any route in the Carrier's discretion (whether or not the nearest or most direct or customary or advertised route), at any speed, and proceed to or stay at any place or port whatsoever, once or more often, and in any order;

(4) load, unload and/or store the Goods at any place or port (whether or not the place of delivery, or port of discharge);

(5) comply with orders, directions or recommendations given by any governmental authority, or by any body purporting to be a governmental authority, or by any Persons authorized under the insurance of the Vessel; or

(6) permit the Vessel to proceed with or without pilots, to tow or be towed, or to be dry-docked.

b) The liberties set out in Clause 13(a) may be invoked by the Carrier for any purpose whatsoever, whether or not connected with the Carriage of the Goods, including the Carriage of other Goods, bunkering, taking on stores, undergoing repairs, dry-docking, picking up or landing any Persons, livestock or being based or assisting Vessel in all situations. Anything done pursuant to Clauses 13 shall not be a deviation.

**14. FREIGHT.**

a) Freight has been calculated on the basis of particulars furnished by the Merchant. If these particulars are incorrect, the Merchant shall pay to the Carrier liquidated damages equal to double the correct freight unless the freight already paid.

b) The Merchant and the Goods are jointly and severally liable to the Carrier for the payment of Freight.

c) Full Freight is completely earned upon entry into the contract of Carriage or the Goods by the Carrier, whichever occurs first. The Carrier is absolutely entitled to all Freight, whether paid or not, and to receive and retain the Freight under all circumstances including whether the Vessel and/or Goods lost or not lost; the Carriage aboard, broken up, frustrated, suspended or abandoned; or otherwise. The Carrier's right to full Freight shall not be affected by the Carrier's exercise of any rights. Full Freight shall be paid without any deduction, set-off, claim, deduction, counterclaim however described.

d) The Merchant and Goods shall be jointly and severally liable to the Carrier for the payment of all Freight, demurrage, General Average, salvage and other charges, including but not limited to, court fees, expenses and reasonable legal fees incurred in collecting any sums due to the Carrier. The Merchant's obligation to pay full Freight is not affected by the fact that this Bill of Lading may contain any of the following or similar annotations: "Freight Prepaid", "C.I.F", "FOB", "Freight to be Prepaid" or any misrepresentation or misinformation provided to the Merchant by the Carrier or its agents.

e) Payment of Freight to a freight forwarder, broker or anyone other than the Carrier or its authorized agent is not payment to the Carrier and shall be made at the payer's sole risk. The ocean carrier must have the exclusive right to Freight to collect payment of the ocean freight.

**15. LIEN.**

The Carrier shall have a general lien on the Goods and any documents relating thereto for all sums payable by the Merchant to the Carrier under this or any other contract and for General Average contributions, to whomsoever due. The Carrier may exercise his lien at any time and in any place in his sole discretion whether the contractual voyage is completed or not. The Carrier has the right to sell the Goods in public or private sale without notice to the Merchant to satisfy the lien in whole or in part and the cost of the sale to be deducted from the proceeds. The proceeds of the sale fail to cover the whole amount due; the Carrier is entitled to recover the deficit from the Merchant.

**16. NOTIFICATION AND DELIVERY.**

a) Arrival dates are guaranteed. The Carrier does not undertake that the Goods shall arrive at any particular time or to meet any particular market or use. The Carrier has no responsibility for any direct, consequential, and special damages for delay or any other kind whatsoever.

b) Notify parties: Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for the information of the Carrier. Failure to give such notification does not impose any liability on the Carrier nor does it relieve the Merchant of any obligation under this Bill of Lading.

c) Cessation of Carrier obligations: All of the obligations in respect of the Goods shall cease upon cargo delivery to the port of discharge or place of delivery above on the face hereof, or upon expiration of the time, which time occurs first. After expiration of free time (but without a proper time being fixed) at the place of discharge or the place of delivery, it shall be at the Carrier's sole option to arrange or provide storage, whether indoors or outdoors and whether in bulk or otherwise, at the sole risk and expense of the Merchant. Delivery of the Goods is the time when the Merchant takes possession or the Carrier's sole option proper storage, but without notice to the Merchant, publicly or privately sell or dispose of the Goods and apply the proceeds of such sale.

d) Expiration of free time: Once free time has expired, the Goods will be stored at a warehouse or warehouse's nominee's terminal at the sole risk and expense of the Merchant and the Goods. However, if the Carrier believes that the Goods are likely to deteriorate, decay, lose value or incur storage or other charges in excess of their value, the Carrier may, without notice to the Merchant, publicly or privately sell or dispose of the Goods and apply the proceeds of such disposition in reduction of the Freight.

e) Goods shipped in Carrier supplied Containers: If the Merchant neglects, fails or refuses to take custody of Goods shipped in Carrier supplied Container within the time period prescribed by the Carrier, the Carrier may construe this as a refusal of delivery and the Merchant shall be liable for all costs relating thereto. The Carrier may construe this refusal to take delivery. The Carrier has the right to sell the Goods in whole or in part.

f) Discharged Goods - completed transport Containers: If a Container packed by the Merchant is not returned empty within the time prescribed by the Carrier, the Merchant shall be liable for all per diem, detention, demurrage or other charges related thereto.

g) Full Container load ("FCL") /combined transport: Goods will be delivered to the Merchant or its nominee at the Carrier's applicable tariff at the port of discharge or place of delivery named in this Bill of Lading or where the Merchant agreed otherwise, but will be construed to have completed delivery corresponding Bill of Lading as a firm Full Container load ("LCL") basis. Such delivery will be to the Merchant or its nominee, within nominee a single place. LCL Cargo; Less Container load; will be delivered by the Carrier's applicable tariff at the Carrier's named or nominee's terminal and the Carrier is deemed to have completed delivery.

h) Merchant's duty to take delivery: Subject to the provisions in this Bill of Lading, the Merchant is obligated to take delivery of the Goods within the time provided for in the Carrier's applicable tariff. If the Merchant fails to take timely delivery, the Carrier may exercise any of the rights set forth above.

**17. NOTICE OF CLAIM AND TIME FOR SUIT.**

Unless notice of loss or damage and the general nature of such loss or damage is given in writing to the Carrier at the Port of Discharge or Place of Delivery before or at the time of delivery of the Goods, or, if the loss or damage is not apparent, within three (3) days after delivery, the Goods shall be deemed to have been delivered as described in this Bill of Lading. In any event, where the provisions of Annex 10 herein applicable, the Carrier shall be discharged from all liability whatsoever in respect of the Goods, unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. In the event the provisions are held not to be applicable, then suit must be brought within nine (9) months after delivery of the Goods or the date when the Goods should have been delivered. Suit shall not be deemed brought until jurisdiction shall have been obtained over the Carrier and/or the ship by service of process or by an agreement to appear.

**18. GENERAL DISCLAIMERS AND LIMITATION OF LIABILITY.**

a) All claims for which the Carrier may be liable shall be adjusted and settled on the basis of the invoice value of the Goods plus Freight and insurance (if paid), or the applicable market value of on the Port of Delivery or Place of Delivery. In no event shall the Carrier be liable for any loss or profit or any consequential loss or damage.

b) Where provisions of 3(a)(1) are compulsorily or contractually applicable to this Bill of lading, the Carrier shall in no event be liable for loss or damage to or in connection with the Goods in an amount exceeding $500 US per package or per shipping unit where the Goods are not shipped in packages. In all other circumstances the Carrier shall in no event be liable for loss of or damage to or in connection with the Goods in an amount exceeding 2 SDR per kilo of gross weight of the Goods lost or damaged (or the equivalent of US$500 per Package or 2.50 per kilo, or US$500 per Package or per shipping unit where the Goods are not shipped in Packages. If such limitation is inapplicable under the local law in which an action is brought, then the Hague Rules (Hamsterdam, Definition of US$500 sterling limit value of the United Kingdom per Package or shipping unit shall apply, or alternatively, if the local national law applicable limit applies. In the Package Dollar limit maximum) the Carrier shall apply under law in which an action is brought.

c) In the absence of any declaration applicable herein to the contrary, the Carrier shall be entitled to the full benefit of the limitation provisions of the 1976 Convention on Limitation of Liability for Maritime Claims.

d) The parties agree to $500 per package as set forth in Clause 18 (b) shall be applicable unless the nature and value of the Goods have been declared by the Merchant before shipment and inserted in this Bill of Lading and extra Freight paid. If the declared value if higher than real value, Carrier will not be liable to the extent of such excess declaration. If, however, a declared value exceeds the actual value, the Carrier is liable only for the actual value.

**19. GENERAL AVERAGE. (GA)**

a) GA to be adjusted in US Dollars at any place at the Carrier's option according to the York/Antwerp Rules 1974 as amended in 1990. Any claim and General Average relating to GA shall be computed under the York/Antwerp Rules and contributions in proportion shall be in the event their port or destination, notwithstanding may be destined for other.

b) In the Carrier delivers the Goods without obtaining security for the GA contribution, the Merchant by taking delivery of the Goods, undertakes personal responsibility to pay such contributions and to provide such cash deposit or other security for the estimated amount of such contribution as the Carrier shall reasonably require. The same to apply to any particular or General Average contribution whatever the nature thereof.

c) The Carrier may include in General Average any amounts paid by him for salvage rendered to the ship or the Goods.

**20. VALIDITY AND SEVERABILITY.**

In the event that anything contained herein is inconsistent with any applicable international convention or national law which cannot be departed from or otherwise given effect to, the provisions hereof shall to the extent of such inconsistency and no further, be null and void. Unless otherwise specifically agreed in writing between the Parties to this contract, the terms and conditions of this Bill of Lading supersede any prior negotiations, course of conduct or agreement between the Merchant and the Carrier.

**21. BOTH TO BLAME COLLISION CLAUSE** (BIMCO), NEW JASON CLAUSE, WAR RISKS CLAUSES 1 AND 2 are deemed to be incorporated in this Bill of Lading. Copies of the above clauses are available at Carrier's local office.

# EXHIBIT B

P9

# Telefax

 **Hapag-Lloyd**

| | |
|---|---|
| **To:** | Duruji Law Firm |
| | Attn. Hon Obinna Duruji |
| **Telefax:** | |

Hapag-Lloyd (America) Inc.
399 Hoes Lane
Piscataway, NJ 08854
www.hlcl.com

| | |
|---|---|
| **From:** | Arne Klockmann |
| **Phone:** | (732) 509-3179 |
| **Telefax:** | (732) 885-6141 |
| **Emai** | Arne.Klockmann@hlcl.com |

November 22, 2006
Pages: 1 +

---

**OUR FILE:**      62975 / AK

---

**YOUR FILE:**     unknown

---

| | | | |
|---|---|---|---|
| **Vessel:** | Atlantic Project | **Voyage:** | |
| **Bill of Lading:** | 251094 | **Container:** | CMUU4614892 |
| **Type of Damage:** | theft | **Claim Amount:** | USD 111.963,75 |

---

**WITHOUT PREJUDICE**

Dear Sirs,

We refer to your letter dated 25th September 2006.

We herewith confirm the receipt of the documents which were sent to us with your letter regarding this matter. We are still investigating all circumstances of this matter and we will be in a position to comment on the cause of the occurred damage soon.

We will come back to you as soon as we have finished our investigations.

Yours faithfully,
Hapag-Lloyd (America) Inc.
As Agents of Hapag-Lloyd AG

Arne Klockmann
Claims Manager